## 10737

### SHANNON v. FREEMAN *ET AL*

(109 S. E. 406)

1. SPECIFIC PERFORMANCE—FAILURE TO MAKE FORMAL TENDER HELD NOT TO DEFEAT REMEDY.—Where a trustee, though without authority to delegate her duties, recognized a sale made by an agent selected by her son-in-law and signed a contract prepared and presented by the son-in-law, and the purchaser, who was ready, willing, and anxious to perform, notified the son-in-law of his readiness to close the contract, and relied on his promise to furnish a deed, and later his statement that he would forward the deed to the trustee for her signature, she having left the State, the purchaser's failure to tender the purchase price to the trustee *held* not to defeat specific performance.

2. VENDOR AND PURCHASER—PURCHASER NOT REQUIRED TO GO TO ANOTHER STATE TO MAKE TENDER.—Where a contract for the sale of land in South Carolina was made in that State and between citizens of such State, it evidently contemplated consummation by payment of the purchase price and delivery of the deed in South Carolina, and the purchaser could not reasonably be required to go to Louisiana, where the vendor had gone temporarily, to tender the purchase price.

3. CONTRACTS—ONE PREVENTING PERFORMANCE OR TENDER CANNOT TAKE ADVANTAGE OF DELAY.—One who has himself prevented performance or tender of performance of a contract at the time set cannot take advantage of the delay.

4. SPECIFIC PERFORMANCE—FAILURE TO MAKE TENDER EXCUSED, THOUGH FACT THAT IT WOULD HAVE BEEN UNAVAILING BECAME APPARENT AFTER TIME FOR TENDER.—Where a tender of the purchase price under a contract for the sale of land would have been refused by the vendor, the purchaser was not barred of his right to specific performance by reason of his failure to make tender, though it did not become apparent that a tender would have been unavailing until after the tender should have been made.

5. VENDOR AND PURCHASER—VENDORS, NOT READY AND WILLING TO PERFORM, CANNOT TAKE ADVANTAGE OF PURCHASER'S LACHES IN MAKING TENDER.—Vendors who were not themselves ready, desirous, prompt, and eager to perform the contract, were in no position to take advantage of any delay or laches attributable to the purchaser in making a tender.

6. SPECIFIC PERFORMANCE—EVIDENCE HELD TO SHOW SELLING PRICE FULL AND FAIR.—In a suit for specific performance, defended on the ground, among others, that the price was inadequate, evidence *held* to show that it was a full and fair price for the land.

7. SPECIFIC PERFORMANCE—ENHANCEMENT OF PRICE AFTER SALE WILL NOT JUSTIFY REFUSAL OF RELIEF.—In a suit for specific performance, the question of adequacy of price must be considered as of the date of the contract, and any subsequent enhancement of value does not justify refusal of specific performance.

8. SPECIFIC PERFORMANCE—NOT DENIED BECAUSE TRUSTEE DID NOT REQUIRE CASH PAYMENT REQUIRED UNDER TRUST, WHERE PURCHASER WILLING TO PAY CASH.—Though a conveyance in trust to sell the land at public or private sale provided that at least one-third of the price must be paid in cash, where a contract of sale by the trustee, not requiring payment of one-third in cash, also allowed the purchaser to pay all cash, and in his suit for specific performance he offers to do so, specific performance will not be denied.

9. SPECIFIC PERFORMANCE—WILL NOT BE GRANTED WHEN BREACH OF TRUST WILL BE CAUSED.—A court of equity should not grant a decree of specific performance when such decree will produce or result in a breach of trust.

10. TRUSTS—CONTRACT TO SELL HELD A "SALE" WITHIN CONVEYANCE AUTHORIZING TRUSTEE TO SELL.—A valid written contract for the sale of land, made upon payment of a substantial part of the consideration, constituted a "sale" within the terms of a deed conveying the land to a trustee in trust to sell, as against the objection that it was only a contract to sell and not a sale.

11. TRUSTS—POWER TO SELL HELD TO INCLUDE POWER TO ENTER INTO CONTRACT TO SELL.—Under a deed conveying land to a trustee in trust to sell the land, even though a sale was not made until the deed was delivered and the purchase money paid, the power to sell necessarily included the power to take such steps as were reasonably necessary to effect a sale, including power to enter into a contract to sell.

12. SPECIFIC PERFORMANCE—PURCHASER, CONTRACTING TO SELL TO ANOTHER, HELD ENTITLED TO SPECIFIC PERFORMANCE.—Where a purchaser of land had contracted· to sell it to a third person, to whom he would be liable in case of his inability to perform, he was entitled to specific performance of the vendor's contract, where the decree asked for would not work hardship upon the vendors.

13. SPECIFIC PERFORMANCE—INTEREST ON PRICE DENIED WHERE DEFAULTING VENDORS REMAINED IN POSSESSION, THOUGH PROPERTY DID NOT PRODUCE INCOME.—In a purchaser's suit for specific performance, the decree will not require payment of interest on the purchase price where the delay in performance was due to the default of the vendors, one of whom has remained in possession, refusing to deliver possession to the purchaser, though the land is vacant and probably has not produced any income.

Before DeVore, J., Greenville, December, 1920.   Affirmed.

Action by W. H. Shannon against Alice E. Freeman et al.   Decree for plaintiff and defendants appeal.

The report of E. Inman, the Master, was as follows:

The Master, to whom this case was referred to take the testimony and to hear and determine all issues of fact and law and report the same to the Court, respectfully reports that he has had several references herein, and has taken the testimony which is reported herewith.

This is an action by the purchaser against the seller for specific performance of a contract of sale of real estate. The complaint alleges that on December 2, 1919, the plaintiff and the defendant Alice E. Freeman, as trustee, entered into a contract whereby   plaintiff agreed to buy for the price of $10,000, and said defendant, as trustee, agreed to sell, a certain lot of land in Greenville, S. C.; that said defendant held said land as trustee for herself and her four children, the other defendants herein; that in a deed conveying to her the said lot of land the said trustee was authorized to sell at private sale provided 1-3 of the price was paid in cash; that the plaintiff has at all times been, and is now, ready and willing to comply, and either to pay the full amount of the purchase price in cash, or to pay 1-3 cash and secure the balance by purchase-money mortgage, but that the defendant Alice E. Freeman at the time fixed for the performance refused and still refuses to convey.

The defendant Lidia M. Schwartz filed a separate answer.   The other defendants filed a joint answer.   The defenses set up by one or the other of these answers and argued before me may be stated as follows:   (1)   A general denial;   (2)   that the price was grossly inadequate;   (3)   that the contract is void, in that it provides for a cash

payment of less than 1-3 of the price, while the trustee had power to sell only upon payment of at least 1-3 of the price; and (4) that the contract is void, in that the trustees had power only to sell outright, and not to contract to sell.

The Master finds the following to be the facts in this case:

The allegations of the complaint are substantially true, being sustained by undisputed testimony. The defendants formerly owned certain real estate in the City of Greenville. This was sold in 1913, and in part payment they took the property in question. By a contract entered into at that time between all the defendants it was agreed that for their mutual convenience in selling and conveying the property in question title should be taken in the name of Alice E. Freeman, as trustee, who should sell it and divide the proceeds among all the defendants. Accordingly, the deed was made, conveying this property to her "in trust to sell said land at public or private sale to such person or persons as she may deem advisable for cash or upon such other terms as may seem proper, provided at least 1-3 cash is paid thereon."

On December 2, 1919, Alice E. Freeman, as trustee, entered into a contract with the plaintiff, which provided that, "Said Freeman as trustee has bargained and sold and will convey or have such conveyance as may be necessary to give good title to said Shannon to all that lot of land," described by metes and bounds. "The purchase price for said lot is $10,000.00, of which $500 is paid at the signing and sealing of these presents, and the remainder to be paid as follows: $2,000 January 15, 1920, and the balance in one, two and three years at 7 per cent. or with privilege to pay all the amount at any time." It further provided that time is of the essence, and that should Shannon fail to make payment at the time stated, the money paid up to such failure should be retained by Mrs. Freeman as liqui-

dated damages, and that upon payment of the $2,000 referred to deed should be executed and delivered to Shannon. At the time of the signing of this contract Shannon paid to Mrs. Freeman the sum of $500.

On November 14, 1919, prior to the execution of the above contract Schwartz (the husband of the defendant, Lidia M. Schwartz, and son-in-law of Alice E. Freeman), purporting to act as agent, had listed this property with W. R. Tabor, a real estate agent or broker, authorizing him to sell it for $10,000 net; that is he was to collect his commission from the purchaser in addition to this sum. Tabor having found a purchaser in the person of the plaintiff, prepared in duplicate the above-described contract in accordance wth terms designated by Schwartz. Both copies were executed by Shannon and delivered to Schwartz, who presented them to Mrs. Freeman for her signature. Mrs. Freeman signed both, and Schwartz returned one copy to Shannon. On the day this contract was signed, Mrs. Freeman left Greenville for a visit to her daughter in Baton Rouge, La. She did not return until January 28, 1920, eight days after date fixed by contract for the payment of the money and delivery of the deed.

Neither Shannon nor Tabor had any conversation with Mrs. Freeman with reference to this contract either before or after execution; all their dealings being had through Schwartz.

After making the contract with Mrs. Freeman, Shannon determined to sell the property, and accordingly placed it in Tabor's hands. About the latter part of December or early part of January, Tabor made the sale to Mr. Pete Hodges, who was acting for his wife, Eva S. Hodges, for the price of $12,500.

Some time prior to January 15, the date fixed for delivery of the deed and payment of the money, Shannon notified Schwartz that he was ready to close the matter,

at the same time telling him about the resale to Mrs.
Hodges, and suggesting that deed should be made either
to Mrs. Hodges or to him. Schwartz stated that it would
be satisfactory to make the deed direct to Mrs. Hodges,
and that he would attend to it. Accordingly Schwartz
had his attorney, Jas. H. Price, prepare a deed conveying
the land to Mrs. Hodges. This deed Schwartz undertook
to execute under a written power of attorney from Mrs.
Freeman. Oscar Hodges, Esq., who at the time was ex-
amining the title and representing Mrs. Hodges in the
transaction, refused to accept a deed signed by Schwartz.
At the same time he advised that, in view of the provisions
in the deed to Mrs. Freeman, at least 1-3 of the price should
be paid in cash. Accordingly a check for 1-3 was left
with Mr. Hodges, who thereupon prepared a new deed,
as well as a note and mortgage to be signed by Mrs. Hodges.
This deed Schwartz forwarded to Mrs. Freeman in Baton
Rouge, La. On January 13th, Shannon wrote Mrs. Free-
man at her Greenville address, giving formal notice that
he was ready to close the matter. On January 23, Mrs.
Freeman returned to Greenville, bringing with her the
deed which had been prepared, but which she had not signed.
It was not until after her return that the parties in Green-
ville had any intimation that she would not convey. It
seems that upon her return she learned that Shannon was
making a profit in the sale to Mrs. Hodges. Thereupon
Shannon was informed by Schwartz that Mrs. Freeman
was not satisfied with the price. Shannon offered to pay
the full amount in cash, but was informed that Mrs.
Freeman would not convey for $10,000. Subsequently
Mr. McSwain, as attorney for Mrs. Freeman, tendered
back to Shannon the $500 which he had paid and which
Mrs. Freeman had retained.

The case was exhaustively argued by counsel for
both sides and the Master has given careful con-
sideration to the questions of law and fact suggested

by the argument. In addition to the points indicated by the answers, counsel for defendants relied largely upon the fact that the plaintiff had made no tender of the purchase price. The Master is of the opinion that the defendants are not in a position to take advantage of this and to defeat plaintiff's right to specific performance upon this ground.

The Master is satisfied from the testimony, and finds as a matter of fact that the plaintiff was at all times ready, willing and anxious to perform, and that he exercised due diligence in the matter. He had dealt with Mrs. Freeman only through Schwartz. In ample time he notified Schwartz of his readiness to close. Schwartz agreed to furnish the deed promptly. When Shannon relied upon this, he did no more than any reasonably prudent business man would have done. It is perhaps true that Mrs. Freeman, being a trustee, could not delegate her duties to Schwartz, nor give him a valid power of attorney to represent her, but it is equally true that all the parties to this transaction did, in fact, think that Schwartz did have authority to represent Mrs. Freeman in this matter. Mrs. Freeman had dealt through Schwartz; she had recognized the sale made by the agent selected and authorized by Schwartz; she had signed the contract prepared in accordance with Schwartz's dictation and presented to her by Schwartz, and by Schwartz she had returned the signed contract to Shannon. She had executed a power of attorney, purporting to authorize Schwartz to act for her, which the parties themselves evidently thought to be valid as is shown by the fact that Schwartz had his attorney prepare a deed, which he signed pursuant to this power of attorney and delivered to Mr. Oscar Hodges for approval. When Shannon learned that Schwartz did not in fact have power to execute the deed, and that Mrs. Freeman was without the State, he did all

that could reasonably have been required of him. He relied upon Schwartz's statement that he would forward the deed to Mrs. Freeman for her Signature. At the same time he mailed a letter to Mrs. Freeman at her home address, notifying her that he was ready to comply. A legal tender within the time limited was prevented by the act of Mrs. Freeman in going to Louisana, immediately upon signing the contract and remaining there until after the time for performance. The contract was made in this State, between citizens of this State, and related to land in this State. It evidently contemplated consummation by payment of the purchase price and delivery of the deed in this State. Shannon could not reasonably be required to go to Louisana to make a tender. Counsel for the defendants suggested that Shannon should have mailed to Mrs. Freeman in Louisiana the consideration or cash portion thereof with executed note and mortgage for the balance. But the Master has hesitation in finding that no reasonably prudent business man would have forwarded this to Mrs. Freeman before she had executed the deed.

One who has himself prevented performance or tender of performance at the time set cannot take advantage of the delay. 35 Cyc. 716; 26 A. & E. Enc. (2d Ed.) 72, 73; Cheney v. Libby, 134 U. S. 68, at 78, et seq., 10 Sup. Ct. 498, 33 L. Ed. 818.

Moreover, Mrs. Freeman herself states, and I find as a matter of fact, that if tender had been made within the time specified, she would not have accepted it, and that at no time after she learned of the resale to Mrs. Hodges would she have conveyed for the price of $10,000.

Where a vendor repudiates the contract, or where it is evident from all the circumstances that tender would have been unavailing, a Court of Equity will not hold a vendee barred of his right to specific performance by reason of

his failure to make tender. 38 Cyc. 135, 136; 26 A. & E. Enc. (2d Ed.) 117, 118; 28 A. & E., Enc. (2d Ed.) 6; 25 R. C. L. 321; 26 R. C. L. 624; Pomeroy, Eq. Jurisp., § 1408; *Wright v. Young,* 6 Wis. 127, 70 Am. Dec. 453.

Counsel for defendants suggest that this rule does not apply unless it was apparent at the time that tender would have been unavailing, and that in this case this was not apparent until later. The Master does not so understand the rule. The basis for the rule is that equity will not require the doing of a useless thing, nor foreclose the rights of the party for failure to do something which in view of all the facts the Court finds would have been useless.

Moreover, as the Supreme 'Court of this State said in *Fanning v. Bogacki,* 111 S. C. 376, at 381, 98 S. E. 137, 138: "The party who desires to maintain an objection founded upon the other's laches must show himself to have been 'ready, desirous, prompt, and eager.' " The Master finds as a matter of fact that at no time have defendants shown themselves to have been ready, desirous, prompt, and eager. They are not in a position to take advantage of any delay or laches if there were any attributable to the plaintiff.

The objection based upon alleged inadequacy of price is not sustained by the testimony. The testimony of reliable real estate men who are familiar with the values of, and have handled large numbers of sales of property in this vicinity, shows beyond question that $10,000 is not an inadequate price for this property; in fact, it appears that relatively this is a much better price than was realized by any of the owners of adjacent property who sold about the same time. It is true that Shannon, some three or four weeks after his purchase, resold the property at a profit. But the profit made by Shannon may well be accounted for by the unprecedented boom

in real estate, resulting in great activity and great increase in prices of Greenville real estate during December, January, and February past. The question of adequacy of price must be considered as of the date of the contract, and the subsequent enhancement in value would not justify refusal of specific performance. 26 A. & E. Enc. (2d Ed.) 27; 3 Elliott on Contracts, § 2286.

It may be added that this boom came to an end long before the reference in this case. If the present market value were an issue, I would have to hold that the present market value is no greater than the market value on December 2, 1919.

Mrs. Freeman and her daughter, Mrs. Kirchner, both testified that they considered the price inadequate. But their statements are not entitled to much weight in view of all the evidence. At the first reference, Mrs. Freeman very clearly sought to give the impression that she had not listed this property for sale within recent years; and had not been anxious to sell it, though at a later reference she admitted on cross-examination that she had listed it, but could not remember the price. Mrs. Kirchner testified that both she and her husband were opposed to a sale at $10,000 and that her husband had never made any effort to sell it. Yet it developed that in 1919 Mrs. Kirchner's husband took the matter up with Dr. Long of the firm of Long & Ables, real estate agents, carried him to the Kirchner home, where Mrs. Freeman was then living, and Mrs. Freeman there gave Dr. Long a written listing or option at the price of $8,000, less commissions, and while the matter remained in Dr. Long's hands both Mrs. Freeman and Kirchner were active in efforts to procure a sale at this price.

Though the sale to Shannon was made on December 2d, and Mrs. Freeman had the contract before her and discussed it with her children, neither Shannon nor Tabor

nor even her son-in-law, Schwartz, had any intimation that the price was not entirely satisfactory until approximately two months later, after Mrs. Freeman returned to Greenville and learned that Shannon had sold it at a profit. The objection of defendants on this ground does not commend itself to the Master.

The Master finds as a matter of fact that the sum of $10,000 was, on the date of the sale, December 2, 1919, and is now, a full and fair price for the land, and that the defendants will not suffer hardship by reason of a decree for specific performance.

Defendants further contend that specific performance of the contract should not be decreed because Mrs. Freeman has power to convey only upon payment in cash of at least 1-3 of the purchase price, while the contract calls for a smaller cash payment. This would be a sound objection if plaintiff had asked for a decree requiring Mrs. Freeman to convey upon payment of only $2,500 in cash, but the contract also allowed payment of all cash, and plaintiff has come into Court offering to pay the entire purchase price in cash, and asking for a decree requiring Mrs. Freeman to convey only upon such payment.

It is unquestionably true that a Court of Equity should not grant a decree of specific performance when such decree will produce or result in a breach of trust for the same reason that it will not grant a decree which will impose undue hardship upon any person. But no such decree is asked for in this case. The decree here sought will be in strict conformity, both with the terms of the contract and with the terms of the deed under which Mrs. Freeman holds.

As a further objection to specific performance, it is urged that this is not a sale, but a contract to sell, and that, while Mrs. Freeman had power to

sell, she did not have power to contract to sell. This involves a too narrow construction of the language of the deed. The Master is of the opinion that the transaction of December 2, 1919, was a sale within the meaning of the language used in the deed. Shannon paid a substantial part of the consideration, $500, and a valid, written contract was entered into. In sales of real estate, it may be said that the sale within the usual and ordinary meaning of the contract is made when a valid contract is entered into in the case of private sales, or when the land is knocked down to the highest bidder in the case of public sales, though almost invariably it is necessary that some time elapse for examination of title and preparation of papers between the making of the sale and the delivery of the deed and payment of the purchase price.

Even if it could be said that a sale is not made until the deed is delivered and the purchase money paid, still the power to sell must necessarily include the power to take such steps as are reasonably necessary to effectuate a sale, including the power to enter into an agreement and to execute and deliver a deed. 31 Cyc. 1077; *Demaret v. Ray*, 29 Barb. (N. Y.) 563.

In general it may be said that the objections of defendants are more of form than of substance.

Mrs. Freeman held title in her name as trustee, merely for the mutual convenience of all the defendants in selling and conveying this property. She made a fair sale at a full price. The purchaser has acted fairly and with due diligence. Relying on his contract with Mrs. Freeman, he has entered into a contract with Mrs. Hodges. Should he be unable to convey to Mrs. Hodges, he would be liable for such damages as she might prove; certainly he would be liable to be subjected to suit for failure to perform his contract. He is entitled to specific performance

of the contract in question, and the decree asked for will not work hardship upon any of the parties.

As was well said by Sir John Romilly, M. R., in *Parkin v. Thorold*, 16 Beavan, 59: "Courts of Equity make a distinction in all cases between that which is a matter of substance and that which is a matter of form; and, if it find that by insisting on the form the substance will be defeated, it holds it to be inequitable to allow a person to insist on such form and thereby defeat the substance."

Should the plaintiff be required to account to the defendants for interest? This question was not argued before the Master, but the Master is of the opinion that the purchaser is not liable for interest. The Master finds that the delay in the performance has been due to the default of the defendants; that the defendant, Mrs. Freeman, as trustee for herself and the other defendants, has remained in possession of the land, refusing to deliver possession to plaintiff, and retaining for herself and the other defendants such benefits or profits as go with the possession of this land. As the land is vacant, it maybe, and very probably is, the case that there has been no income therefrom. But of this defendants cannot complain. Such benefit, if any, as grows out of possession of this land they have retained over the protest of plaintiff. Where the delay in performance is imputable to the vendor, he is not entitled to interest. *Hart v. Brand,* 1 A. K. Marsh. (Ky.) 159, 10 Am. Dec. 715; *Stevenson v. Maxwell,* 2 Sandf. Ch. (N. Y.) 273; *Cheney v. Libby,* 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; 22 Cyc. 1554, 1557; 16 A. & E., Enc. (2d Ed.) 1064; 15 R. C. L. 33.

The Master therefore recommends that a decree do issue, ordering that the defendant Alice E. Freeman do execute a good and sufficient deed, conveying to D. H. Shannon the land described in the complaint; that said

deed be delivered to plaintiff upon payment by plaintiff to the Master of the sum of $9,500 (being the purchase price, less the sum of $500 already paid), and that out of said sum so paid the Master do pay the costs of this action, and do pay over the balance to Alice E. Freeman, as trustee, for distribution among the defendants in accordance with their rights.

*Messrs. Bonham & Price and J. J. McSwain,* for appellants. *Mr. McSwain* cites: *Contract speculative and performance will not be decreed:* 114 S. C. 245. *Equity will not decree performance where the result would compel a breach of trust:* 25 R. C. L. 244. *Performance will not be decreed where contract is with two persons independently against the first to the detriment of the second:* Ann. Cas. 1912 A. 362. *Nor of a contract made by two of three trustees;* 4 Ann. Cas. 952, 188 U. S. 646. *Nor by one partner of partnership property:* 37 S. E. 841.

*Messrs. Haynesworth & Haynesworth,* for respondent, cite: *Where there has been an excess in the execution of a power it is void as to the excess but good within the limits of the power:* 31 Cyc. 1146; 3 Wash. C. C. 12; 26 Md. 119, 90 Am. Dec. 88; 14 Mich. 215; 144 N. Y. 365, 39 N. E. 358; 14 N. Y. Sup. Ct. 123; 14 Ohio St. 260; 19 Am. Dec. 92; 1 Ch. Cas. 23; Ambl. 740; Hill on Trustees (4th Am. Ed.) 755; Tiffany Real Prop. Sec. 326; 2 Sugd. Powers (3rd Am. Ed.) 68, 106, 110. *Where agreement signed by one party is received by another party who does not sign it but acquiesces in it and acts upon it, or allows the other party to act upon it, he is bound as if he had signed:* 40 L. R. A. 589; 30 L. R. A. 491; 27 S. C. 376; 119 Pac. 646; 37 L. R. A. (N. S.) 322; 70 S. W. 390; 115 N. W. 32; 116 S. W. 431; 113 M. W. 468; 73 S. E. 618; 135 Pac. 678; 131 Pac. 176; 17 N. W. 495; 9 S. W. 138; 35 N. E. 392; 24 N. E. 756; 30

N. E. 1060; *Granting of specific performance is matter of sound judicial discretion*: Pom.° Eq. Jur., Sec. 1404; *and should be encouraged rather than discouraged*: Rich. Eq. Cas. 235.

October 10, 1921.

The opinion of the Court was delivered by Mr. Justice Cothran.

This Court is entirely satisfied with the very able report of the Master, confirmed by the Circuit Judge, and the decree is accordingly affirmed.