## 10798

### KIRKPATRICK v. HARDEMAN

#### (110 S. E. 119)

1. FRAUDS, STATUTE OF—SUFFICIENT MEMORANDA OF SALE OF STOCK HELD MADE BY BROKER'S SCRATCH PAD LETTER FROM CUSTOMER WHEN INFORMED OF SALE.—Where defendant listed stock with brokers for sale, and the broker made a verbal sale thereof to plaintiffs, and made a memorandum in regard to the matter on a scratch pad, "Sold K. (plaintiff) one hundred shares Watts Second Preferred at $98.50 from H. (defendant)," and defendant, when informed of the sale, answered by letter that he regretted being unable to deliver the stock in that the stock had been sold to others, *held*, that it was a sufficient memorandum in writing signed by defendant to charge him with a contract of sale of the stock under Civ. Code 1912, § 3738.

2. TENDER—UNEXPLAINED SILENCE ON DEMAND HELD TO RENDER TENDER OF PURCHASE PRICE UNNECESSARY.—Where defendant did not reply to a letter from his agent demanding delivery of corporate stock sold to plaintiff, his unexplained silence tended to show a refusal to comply with the request so as to render a tender of the price on the part of plaintiff unnecessary.

Before ANSEL, J., County Court, Greenville, October, 1921. Reversed.

Action by H. W. Kirkpatrick against Isaac Hardeman. From order of nonsuit plaintiff appeals.

This is an action for damages alleged to have been sustained by the plaintiff on account of the refusal of the defendant to comply with his contract in regard to the sale of certain shares of stock.

The allegations of the complaint are as follows:

"I.   That the plaintiff is a resident of the City of Greenville, State and County aforesaid, and that the defendant is a nonresident of the State of South Carolina, residing in the City of Charlotte, State of North Carolina, with property in the City of Greenville, State of South Carolina.

"II.   That on October 25, 1919, defendant agreed to sell through his agents, Stone and Goldsmith, and the plaintiff agreed to buy, 100 shares of Watts Mills stock, second preferred, at the agreed price of $98.50 per share.

"III.   That the defendant has failed and refused to comply with his agreement to sell said stock and still refuses to comply.

"IV.   That after said agreement the market value of said stock greatly enhanced in value so that same became worth over $127.50 per share.

"V.   That thereafter the plaintiff by reason of the failure of the defendant to comply with his said agreement, was compelled to buy elsewhere the 100 shares of Watts Mills stock, second preferred, and to pay therefor more than $127.50 per share.

"VI.   That, by reason of the failure of defendant to comply with his agreement as aforesaid, the plaintiff has suffered damages in the sum of $2,975.00."

The defendant denied the allegations of the complaint, and by way of defense, alleged:

"That this action is founded upon a contract for the sale of certain shares of stock of the value of more than $50,

and that no part of said stock was accepted by the buyer or actually received by him, nor was anything given in earnest to bind the bargain or in part payment therefor, nor was any note or memorandum in writing made thereof, and signed by the party to be charged therewith or by any agent by him thereunto authorized."

. W. B. Stone, a witness for the plaintiff, testified as follows:

"I was in business in Greenville in September, 1919, with Mr. Goldsmith in the firm known as Goldsmith & Stone; was engaged in buying and selling stocks, bonds, insurance, etc. During that time I had transactions with Mr. Hardeman. Received letter from Mr. Isaac Hardeman dated September 1, 1919, as follows:

" 'Charlotte, N. C., Sept. 1, 1919.

" 'Mr. W. B. Stone, Greenville, S. C.: I wish to list the following stock and would thank you to let me know what the market price is today for same:

" '175 shares Duncan Mills, common.

" '100 shares Watts Mills, second preferred. * * *

[Signed] ISAAC HARDEMAN."

"I wrote the following letter in reply:

" 'Greenville, S. C., Sept. 3, 1919.

" 'Mr. Isaac Hardeman, Charlotte, N. C.: Yours of the 1st inst., relative to the listing of your several shares of different stocks for sale.

" 'It gives us pleasure to give you the quotations on the market as it stands today; however, the market for certain stocks seems to be on the rise, hence these quotations are subject to change.

" '500 Watts Mills, second preferred, $96.00. * * *

" 'I endeavored to get in touch with you over the phone today, but you were out of town.

" 'Will appreciate your calling me over phone at my expense tomorrow.

" '[Signed] GOLDSMITH & STONE,

" 'By W. B. Stone.'

"In the letter dated October 21, 1919, in which I said 'relative to the 175 shares of Duncan Mills common and 100 shares Watts second preferred,' I was referring to a phone conversation with him. His instructions over the phone were to sell the Duncan when it reached $130 a share and the Watts second preferred when it reached $98 per share. I was to sell the stock unless in the meantime I heard to the contrary. I did not hear to the contrary. I was not given instructions not to sell between this time and the time I sold. With reference to disposing of the stock, after I received the letter of September 1st, listing several stocks which I answered by letter giving prices on that day, I tried to get him over the phone. The stock was active. Later I did get him over the phone, and talked with him especially about the Duncan and Watts second preferred. He told me that he wanted $98 per share for Watts and $130 for Duncan, and when they reached that I could sell. They had not reached that price then, and I asked him if he would give them to me firm, and he said 'Yes.' I was to do nothing about the other stocks unless they became active; then I was to call him. I wrote a letter dated October 21st to confirm the phone conversation, and I heard nothing to the contrary. That letter was as follows:

" 'Greenville, S. C., Oct. 21, 1919.

" 'Mr. Isaac Hardeman, Charlotte, N. C.: With reference to our conversation over the telephone a day or so ago, regarding the mill stocks you have listed with me for a sale relative to the 175 shares of Duncan Mills, common, and the 100 shares Watts Mills, second preferred, I understand that I am to sell the two stocks, when Duncan reaches $130.00 per share, and Watts second preferred, at $98.00 per share. The other stocks you have set no price upon, and upon any advance in the market I am to communicate with you before selling. However, as I understand, the price set on the Duncan and Watts is firm, and in event

the market reaches the points stated, I can sell unless I hear from you to the contrary in the meantime.

"'[Signed] GOLDSMITH & STONE,

"'Per W. B. Stone.'

"On or about October 25th I met Mr. Kirkpatrick, and he asked me about stocks. I told him I had 100 shares of Watts second preferred firm for which I wanted $98.50. The 50 cents was for commissions, the $98 was net for the stock. Kirkpatrick said that was higher than it was at the present time and he would go to the store and think about it and let me know in a few minutes if he wanted it. When he came I was not there, but when I returned I found a memorandum on my desk. The memorandum was as follows: 'Kirkpatrick will take 100 shares Watts second preferred at $98.50.'

"Then I wrote a telegram which I carried to the store, showed to Mr. Kirkpatrick, and then sent to Mr. Hardeman. I made a memorandum myself in regard to the matter on a scratch pad. I always made notations whenever I sold stock, the name of the buyer, when he bought, the price paid, and commission. When I showed the telegram to Kirkpatrick, he said it was all right, so I sent it. The memorandum which I made was: 'Sold Kirkpatrick 100 shares Watts Second Preferred at $98.50 from Isaac Hardeman.' That was on October 25, 1919. I made this immediately after I sent the telegram' which was about 10 a. m. I did not hear from Mr. Hardeman for several days. *I have never been able to get him to deliver the stock. Mr. Kirkpatrick offered to comply with the terms of sale.* (Italics added).

"I received the letter of October 27th on October 30th, of which the following is a copy:

"'Charlotte, N. C., Oct. 27, 1919.

"'Goldsmith & Stone, Greenville, S. C.—Attention Capt. W. B. Stone: The writer has been absent from the city and has just returned this morning and finds your tel-

egram of the 25th in regard to the hundred shares of the Watts second preferred, and he wishes to say that during his absence the parties who are also interested in this stock sold the stock before your telegram was received.

" 'Regretting our being unable to deliver this, we are,

" 'Yours very truly,

" 'ISAAC HARDEMAN.' "

At the close of the testimony the defendant made a motion for a nonsuit on two grounds: (1) That the agreement between the parties was within the statute of frauds; and (2) that this was a sale of stock for cash, and the delivery of the stock and payment of cash were concurrent, and there was no evidence that the plaintiff tendered the price and demanded delivery of the stock.

His Honor, the County Judge, overruled the first ground of nonsuit but sustained the second. The plaintiff appealed upon the following exceptions:

"It is submitted that his Honor erred in granting the motion for nonsuit in the following particulars: (1) On the ground that there was no evidence that the plaintiff had tendered to the defendant the purchase price of the stock, it being submitted that there was evidence not only of failure to deliver within reasonable time, but also of a refusal by the defendant to make delivery of the stock, and that such failure and refusal (if established to the satisfaction of the jury) would excuse tender of the purchase price."

And the defendant's attorneys gave notice that they would make a motion in this Court to sustain the order of nonsuit, on the ground that the agreement in question was within the statute of frauds.

*Messrs. Haynesworth & Haynesworth,* for appellant, cite: *Contract may be made up from different papers:* 20 Cyc., 278. *And parol evidence competent to connect papers:* 106 S. C., 10; 33 S. C., 367. *What is sufficient memorandum to satisfy the Statute:* 2 Speers, 292; 26 S. C. L., 255; 31 S. C. L., 373; 20 Cyc., 256; 1 Civ. Code

1912, Sec. 3738; Williston on Sales, Sec. 100; 29 S. C., 533; 34 S. C., 309; 104 S. C., 430; Cheves, 68. *Tender excused where there is no possibility of compliance*: 113 S. C., 10; 6 R. C. L., 948; 13 C. J., 663, 664; 219 Fed., 477; 26 R. C. L., 624; 2 Williston Contracts, Sec. 767.

*Messrs. Bonham & Price,* for respondent, cite: *No evidence of tender and nonsuit proper*: 6 Rich. L., page 188p.; 52 Am. Dec., 288; 62 Iowa, 114; 1 N. C., 172; 1 Hill (N. Y.) 365. *Memorandum must be signed by duly authorized agent*: 26 S. C. L. (1 McMull) 453.

December 19, 1921.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The first question that will be considered is whether the agreement was within the statute of frauds. Section 3738 of the Code of Laws of 1912 is as follows:

"No contract for the sale of any goods, wares and merchandise for the price of fifty dollars or upwards shall be allowed to be good except the buyer shall accept part of the goods so sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents thereunto lawfully authorized."

It was not necessary for the plaintiff to prove that there was a compliance with the foregoing requirements on his part, but that there was a memorandum in writing signed by the defendant, or by his agent thereunto lawfully authorized. The case of *Louisville Co. v. Lorick & Lowrance,* 29 S. C., 533; 8 S. E., 8; 2 L. R. A., 212, shows that there was a sufficient compliance on the part of the defendant and his duly authorized agent to take the case out of the requirements of the statute of fraud. Therefore the defendant's motion to sustain the order of nonsuit must be overruled.

We proceed to the consideration of the appellant's exception as to the alleged failure of tender.

The record contains a copy of the following letter:.

"Greenville, S. C., Oct. 30, 1919.

"Mr. Isaac Hardeman, Charlotte, N. C.—Dear Sir: Referring to our telephone conversation this morning, I beg to state that my customer, Mr. J. W. Kirkpatrick, of this city, demands delivery of one hundred shares Watts Mills second preferred stock sold him at $98.00 per share, plus commission; hence we must demand of you delivery of this stock in due course of time. * * * Unless you make such adjustment, we hereby give you notice that we demand delivery of the stock.

"Yours truly,

"GOLDSMITH & STONE,

"By W. B. Stone."

The record does not show that the defendant replied to this letter. His unexplained silence tended to show a refusal to comply with the request, and to render a tender on the part of the plaintiff unnecessary. *Clinton v. Carpenter,* 113 S. C., 10; 101 S. E., 47.

The testimony in regard to waiver of tender by the defendant was susceptible of more than one inference, and should have been submitted to the jury. This exception is sustained.

Reversed.

MR. JUSTICE COTHRAN did not sit.