### 12159

### McCALL CO. v. HOBBS-HENDERSON CO.

(136 S. E., 762)

1. SALES—TRIAL COURT PROPERLY REFUSED TO DIRECT VERDICT ON CONFLICTING EVIDENCE OF AMOUNT DUE ON PATTERN CONTRACT.—Where, in action for breach of pattern contract, evidence as to amount due was conflicting, trial Court properly refused to direct verdict.

2. TENDER—"TENDER" IS OFFER WHERE ACTUAL PERFORMANCE IS PREVENTED BY PERSON ENTITLED THERETO.—"Tender" is offer by debtor, or other person who is under obligation to pay debt or perform obligation; actual payment or performance being prevented by refusal of creditor, or person entitled to performance, to accept same.

3. CONTRACTS—TENDER IS NOT REQUIRED IF ONE PARTY NOTIFIES OTHER THAT HE ELECTS TO BREAK CONTRACT.—When one party notifies other that he elects to break the contract, the tender would be an idle performance, and is not required by law.

Before SEASE, J., Spartanburg, June, 1925. Affirmed.

Action by the McCall Company against the Hobbs-Henderson Company. Judgment for defendant, and plaintiff appeals.

The pattern agency agreement as referred to in the dissenting opinion is as follows:

"Town of Spartanburg, State of South Carolina,

"Sep. 16, 1922.

"The McCall Company, New York, N. Y. As your special agent at Spartanburg, S. C., delivered to carrier for us:

"(a) A stock of McCall patterns, including the current issue, amounting to $1,200.00 at 50 per cent. of labeled retail prices. Of this amount $600.00 is to be paid by us thirty

days after date of shipment; the balance, $600.00, is to remain as a standing credit during the operation of this agreement, upon which standing credit we agree to pay interest at the rate of 5 per cent. per annum.

"(b) An average of $60.00 per month of new monthly patterns of your selection at 50 per cent. of labeled retail prices, commencing with the current issue.

"(c) McCall fashion sheets as specified below at $10.00 per thousand. When 5,000 or more fashion sheets per year are ordered, our individual advertisement will be printed in the space provided at an extra charge of $1.00 per issue, and may be changed six times yearly.

"(d) Other publications at regular wholesale rates in quantities specified below.

"Patterns bought from you hereunder and reported by you semiannually in January and July, as discarded, may, during the operation of this agreement, be returned by us to your New York office during that January or February and that July or August, only at 90 per cent. of regular wholesale prices, in exchange for any patterns which may be shipped to us hereunder after receipt by you of the discarded patterns; in consideration of which we will maintain stock on hand at not less than $1,200.00 at 50 per cent. of labeled retail prices, conserve the best interest of the agency at all times, and reorder, weekly or oftener, patterns as sold. A detailed inventory of patterns bought from you and on hand after each discarding will be sent to you at the time of the return of the discarded patterns.

"We will not assign this agency, nor move the same to other premises, without your written consent.

"All goods bought, except the original stock of patterns, will be paid for on or before the 10th of the month succeeding date of shipment. All prices quoted are net, and we will pay transportation charges on all goods received from you or returned by us.

"This agreement is to remain in force from date of acceptance at New York, N. Y., and for a term of five years

after date of first shipment hereunder, and from year to year thereafter, unless terminated by a three months' written notice given by either party to the other within thirty days after expiration of the original term or any subsequent yearly term as specified above.

"The standing credit may be liquidated by delivery to your New York office within thirty days after fulfillment of this agreement of a sufficient quantity of live patterns, in good salable condition, which shall be credited at 100 per cent. of the regular wholesale rates.

"Fashion sheets, beginning with the current issue: January, 1,000; February, 1,000; March, 1,500; April, 1,500; May, 1,500; June, 1,500; July, 1,000; August, 1,000; September, 1,500; October, 1,500; November, 1,500; December, 1,500.

"McCall Book of Fashions (quarterly: Spring, 100; Summer, 100; Fall, 100; Winter, 100.

"McCall's Magazine, per month, 75; McCall's Embroidery Book, per issue, 75; McCall's Complete Catalogue for Counter Use, per month, 3.

"Counter book covers, 3; $2.00 each. Signs loaned, full set. Fashion sheet stand, at $——— each. Wall display container (fashion sheets), at $——— each.

"Drawer cabinets, 18 drawers each, mahogany or oak, at $——— per drawer. Pigeonhole cases, 48 tills each, at $——— per till.

"Hobbs-Henderson Co. will use their own cabinets.

"(Agent's Signature.)

>"Hobbs-Henderson Co.,
>>"By (Signed) C. O. Hobbs, Pres.
>"The McCall Company,
>>"By (Signed) James P. Coghlan.

"Approved and accepted, New York, N. Y., Sept. 19, 1922.                    The McCall Company,
>>"(Incorporated State of New York),
>>"By. Wm. B. Warner, President."

*Messrs. Carlisle & Carlisle* and *J. Hertz Brown,* for appellant, cite: *Burden on respondent herein to disprove allegations of complaint:* 84 S. C., 119. *Lost profit proper element of damages:* 128 S. C., 344; 122 S. E., 859; 114 S. C., 533; 104 S. E., 178. *"Standing credit" clause of contract construed:* 132 S. C., 59. *No evidence of custom and usage sufficient to vary terms of written instrument:* 129 S. C., 53; 44 S. C., 227. *Appeal from ruling on motion addressed to discretion of Court must show abuse of discretion:* 130 S. C., 330; 128 S. C., 310; 111 S. C., 376; 84 S. C., 117. *Similar contract construed in* 258 U. S., 346. *"Special agent" has definite legal meaning:* 31 Cyc., 1206 and 1341; 36 Cyc., 517; 2 C. J., 428.

*Messrs. Brown & Boyd,* for respondent, cite: *"Tender" defined:* 84 S. C., 434. *Actions of opposite party rendering tender unnecessary:* 118 S. C., 146; 110 S. E., 119; 117 S. C., 480; 113 S. C., 10. *Contract may be altered by agreement of parties:* 110 S. C., 421; 105 S. C., 107. *Usages of trade become part of contract:* 132 S. C., 409; 129 S. E., 199; 128 S. C., 354; 122 S. E., 872; 104 S. C., 435; 89 S. E., 474; 104 S. C., 381; 89 S. E., 358. *All terms in contract to be given effect if possible:* 131 S. C., 256; 127 S. E., 14; 104 S. C., 378; 89 S. E., 358. *Ambiguity in contract requiring explanation by extrinsic evidence raises question for jury:* 126 S. C., 356; 120 S. E., 64; 100 S. C., 1. *Construction placed on contract by parties will aid solution of ambiguity:* 130 S. C., 285; 125 S. E., 641; 89 S. C., 80; 71 S. E., 370; Ann. Cas., 1913, A, 33; 9 Cyc., 588.

February 21, 1927.

The opinion of the Court was delivered by Mr. Chief Justice Watts.

"This action was begun by the service of summons and complaint on the defendant on the ———— day of December, 1924, for the purpose of recovering damages in the sum of $2,814.36, with interest, alleged to have been sustained by

the plaintiff by reason of defendant's breach of a pattern contract. The cause came on for trial before Judge T. S. Sease and a jury in the June, 1925, term of the Court of Common Pleas for Spartanburg county. At the close of all testimony, plaintiff moved for a directed verdict, which was refused. The case was submitted to the jury, which brought in a verdict for defendant. Within due time the plaintiff gave notice of intention to appeal to the Supreme Court."

The exceptions of the appellant, twelve in number, raise the following question: Error in not directing a verdict for the plaintiff. In refusing to permit the plaintiff to recover damages by reason of loss of profits for the unexpired term of the contract. In permitting the witness Switzer to interpret and explain the contract with reference to the standing credit item and thereby permit the witness to vary the terms of the written contract. Did the Judge properly construe the contract and correspondence in his charge to the jury?

1, 2    His Honor could not have directed a verdict as asked for, as there was a conflict of the evidence as to the amount due. There is no evidence of a sale of patterns which Hobbs did not take at a loss of profits, and no evidence of any known value different from the contract price. McCall's witness merely said, "I have estimated" the loss of profit. As to these issues a sharp issue is made by the evidence as to the termination of the contract. Hobbs offered to return the patterns, and his offer was refused.

"Tender has been well defined as 'an offer by a debtor, or other person, who is under an obligation to pay such debt or to perform such obligation, the actual payment or performance being prevented by the refusal of the creditor, or person entitled to performance, to accept the same.' " *Lumber Company v. Small,* 84 S. C., 434, 439; 66 S. E., 880, 882.

Where an offer by letter to carry out a sale contract was not answered, the Courts say:

"The record does not show that the defendant replied to this letter. His unexplained silence tended to show a refusal to comply with the request, and to render a tender on the part of the plaintiff unnecessary." *Kirkpatrick v. Hardeman,* 118 S. C., 146, 153; 110 S. E., 119, 121.

"One who has himself prevented performance or tender of performance at the time set cannot take advantage of the delay." *Shannon v. Freeman,* 117 S. C., 480, 487; 109 S. E., 406, 409.

But tender looks to the performance of a contract, and is made to secure performance. Of course, when one party notifies the other that he elects to break the contract, the tender would be an idle performance, and the law does not exact such like. *Clinton Oil & Mfg. Co. v. Carpenter,* 113 S. C., 10, 18; 101 S. E., 47.

Witness did not vary the terms of the contract, but merely that the standing credit would be liquidated either by payment or returning the patterns. This is what the contract called for and no variance from it. He explained his book account and not the contract.

We see no error in his Honor's charge as complained of; he properly interpreted the issues as made by the pleadings and contract, evidence and correspondence, and the whole case. We see no error as complained of by the exceptions.

All exceptions are overruled, and judgment affirmed.

Messrs. Justices Blease and Stabler, and Mr. Acting Associate Justice Purdy, concur.

Mr. Justice Cothran (dissenting): This is an action for $2,814.36 damages, on account of damage alleged to have been sustained by the plaintiff, as a result of the breach by the defendant of a certain contract for the sale by it of certain

patterns for dresses and other feminine wear to the defendant. The contract is in writing, and will be incorporated in the report of the case.

Two elements of damage are alleged in the complaint: (1) The purchase price of the goods delivered prior to the alleged breach of contract, but not paid for; and (2) the loss of the profits which the plaintiff would have made upon the goods contracted for, and which would have been delivered between the time of the alleged breach and the expiration of the contract.

The facts are these: The plaintiff McCall Company is a manufacturer of patterns in the city of New York, for sale to retail dry goods merchants; the defendant Hobbs-Henderson Company is engaged in that business in the city of Spartanburg. On September 16, 1922, the plaintiff and the defendant entered into the contract in question, the substance of which is as follows: Hobbs-Henderson Company was appointed special agent of McCall Company at Spartanburg. For convenience I shall refer to the plaintiff as the seller, and the defendant as the buyer. The seller agreed to deliver to the carrier for the buyer a stock of McCall patterns, including the current issue, amounting to $1,200, at 50 per cent. of labeled retail prices, at the price of $1,200, payable $600 in 30 days and the balance $600 to remain as a "standing credit," really a standing debt against the buyer, during the operation of the contract, upon which the buyer agreed to pay interest at the rate of 5 per cent. per annum. The seller also agreed to ship to the buyer $60 worth of new monthly patterns per month, of the buyer's selection, at the same price, with fashion sheets and other advertising matter. As such patterns were, by the mandate of fashion, constantly changing, the seller agreed that the buyer might return to it, during the months of January and February, and July and August, all patterns which the seller, during January and July, should report to the buyer as "discarded" patterns,

and that the buyer should have credit thereof at 90 per cent. of the regular wholesale prices. The contract also provided that the buyer might liquidate the "standing credit" (debit?) *"Within 30 days after fulfillment of that agreement,"* by delivering to the seller in New York, live (that is, not discarded) patterns at 100 per cent. of the regular wholesale prices. The agreement was to remain in force 5 years from date, with certain provisions as to renewal. "All goods bought, except the original stock of patterns, to be paid for on or before the 10th of the month succeeding date of shipment. All prices quoted are net, and we (buyers) will pay transportation charges on all goods received from you (sellers) or returned by us."

The plaintiff contended by testimony that it had shipped to the defendant patterns to the amount of $2,591.51, and that the defendant was entitled to credit for $891.53, leaving a balance of $1,699.98; the defendant contended that the amount should be $2,314.18, subject to credit for $1,450, leaving a balance of $864.18, which would be more than exhausted by a return of the live patterns on hand.

Although the defendant had agreed to pay the $600 upon the original shipment within 30 days, and the monthly shipments by the 10th of the succeeding month, the only payments for which it claims credit are:

March 6, 1923 ............................ $350.00
April 10, 1923 ............................  300.00
April 26, 1923 ...........................  200.00

                                          $850.00

And, although the statement from the defendant's books do not agree with the books of the plaintiff, as to the amount of goods shipped, the defendant admits that goods were received after it had thrown up the contract, which were placed in warehouse and not entered upon the books.

On May 30, 1923, the defendant wrote the plaintiff, expressing surprise that its next door neighbor was selling McCall patterns, and closed with this statement:

"If it is your intention to have them on sale next door, we will ask you to take up what we have on hand and give us credit for them."

Mr. Hobbs testified that, after that he refused to accept any more deliveries, and that the plaintiff ceased shipping; he admits that he told the plaintiff's salesman, "we had discontinued the line because they had placed an agency next door to us." He had no right to terminate the contract on this ground or to demand that the plaintiff give him credit for the patterns on hand. The Circuit Judge stated in his charge:

"Now, the defendant denies all the allegations of the complaint simply and solely, and nothing more is said. They contend, in effect—but it has nothing to do with this case, because the contract says nothing about it, and they plead it not in the answer—that this agreement on the part of McCall was that Hobbs-Henderson should be the sole agent for their patterns in Spartanburg. I do not so construe the contract. It doesn't say so, and, in addition to that, the defendants do not plead that by way of a set-off or a breach of the contract."

The defendant's letter of May 30th was followed by an extensive correspondence, in which the plaintiff insisted upon his right to appoint another special agent at Spartanburg, and the defendant insisted upon his right to terminate the agreement and force the plaintiff to take back all of the patterns on hand and give him 100 per cent. credit therefor. Finally, to end the controversy, the plaintiff made an offer to accept $1,072 in full settlement, which was declined, or to give the defendant credit for $600 and accept 50 per cent. of the patterns on hand, which was also declined. The defendant then invited the plaintiff into the "arena of justice."

At the close of all of the testimony the plaintiff moved for a directed verdict (1) for the whole amount of damages claimed, including the amount due for goods delivered and for loss of profits; (2) for at least the amount due for goods delivered. The motion was refused.

As to the matter of loss of profits, I think that the motion was properly refused, for the reason that that was an issue for the jury; but the ground upon which the refusal was based is clearly erroneous. The Circuit Judge held and charged the jury:

"I hold, gentlemen, that both parties seem to have consented that the contract be considered at an end, * * * and I instruct you that there can be no recovery for damages for any alleged breach of contract. * * * It is my duty, gentlement, to instruct you that this contract was at an end when both parties agreed by their correspondence tacitly that the contract should be at an end and should not run for five years."

I do not see the slightest foundation in the testimony for this conclusion. The defendant was insisting upon a termination of the contract upon a ground that the Circuit Judge himself held was untenable. The plaintiff was insisting upon his right under the contract, and gave no evidence, so far as I can see, of an intention to relieve the defendant from its obligations. The fact that various efforts at compromise were made is no indication of a consent that the contract be considered ended. So far as the complaint is based upon the loss of profits on account of the defendant's admitted breach of the contract is concerned, I think the case should be remanded for a new trial upon this issue.

As to the matter of payment for the goods actually delivered: The obligation of the plaintiff under the contract was to deliver the goods to the carrier; it was shown by undisputed evidence that goods to the amount of $2,591.51 were actually delivered, and that the defendant was entitled to a credit of $891.53, leaving a balance of $1,699.98.

The defendant made no denial of these facts, and admitted that, while its books showed acceptance by it of goods to the amount only of $2,314.18, various invoices were actually received by it after refusal to take any more. I think under the evidence that the plaintiff was entitled to a directed verdict for the amount so delivered $1,699.98.

The defendant can get no credit for discarded patterns, for it admits that it had notice of discards in January, 1923, and enters no claim for any credit other than it has received upon this account. Nor is it entitled to credit upon the $600 standing debit for the patterns on hand; for the contract specifically states that this credit is not allowable until 30 days after the fullfillment of the contract. It has not been fulfilled but unwarrantably breached by the defendant.

I think, therefore, that the judgment of the Circuit Court should be reversed, and the case remanded to that Court, with direction to enter judgment in favor of the plaintiff for $1,699.98, with interest from May 30, 1923, and for a new trial upon the issue of loss of profits.