## OLSEN et al. v. THOLEN.

No. 6982. Decided February 5, 1947. (177 P. 2d 75.)

See 66 C. J. Vendor and Purchaser, sec. 733; 55 Am. Jur. 770.

*R. Verne McCullough,* of Salt Lake City, for appellant.

*Moyle, McKay,. Burton & White,* of Salt Lake City, for respondents.

McDONOUGH, Chief Justice.

The trial court decreed specific performance of an agreement to sell real estate, and defendant appeals.

Defendant listed her property with a real estate broker on September 22, 1945. On November 19, 1945, she signed the preliminary contract of sale, frequently called an "earnest money receipt." The form of the agreement is similar to the one set out in *Johnson* v. *Jones,* 109 Utah 92, 164 P. 2d 893. By the terms of such instrument signed by the broker, by defendant as seller and by plaintiffs as buyers, $100 was paid to the broker as a part of the down payment, and the further sum of $1,900 was to be paid on or before January 19, 1946, to complete the down payment. The balance of the purchase price was to be paid in monthly installments, and upon payment of the balance of such down payment the parties were to execute the final form of contract called "uniform real estate contract."

Plaintiffs experienced some difficulty in selling their own home, and on January 18, 1946, they requested an extension of time for 30 days, which defendant declined to grant. On the same day, Duane Owen Olsen, one of the plaintiffs, stated to defendant, that he had "another little bomb-shell" for defendant. He said, "I have sold my option to Mr. Cheney." Mr. Cheney was a real estate salesman associated with another broker, and he was a stranger to the transaction when introduced to defendant on that day. On the back of one copy of the contract there was written the following notation over the signatures of plaintiffs:

"We the undersigned do hereby sell this paper and all the authority contained therein. 1/18/46."

Defendant asked why plaintiffs had not given her an opportunity to buy back the contract, and they said they could not do anything about it then as they had sold it to Mr. Cheney. Defendant stated that she did not know Mr. Cheney and did not want to have anything to do with him. When defendant questioned the attempted substitution of Cheney, Mr. Davis, the broker, stated to her that he did not know if the buyers had any right to assign, and that he would have to consult his lawyer about it. Cheney said he had the money to complete the transaction, and wanted to know if he could pay the money immediately. That evening the broker asked defendant for the abstract of title during the course of the aforesaid conversation. Defendant stated she did not have it there.

The following day, which was the last day for payment of the $1,900, defendant sent her son to the broker to get her copy of the contract which had not been returned to her. Cheney went to the office of the broker and attempted to pay the $1,900 to the broker, but the money was then declined with the explanation that the money could not be accepted from Cheney without authorization from defendant. On the same day, on plaintiff's copy of the contract Cheney wrote over the notation made by the Olsens the previous day, "canceled 1-19-46." Cheney then wrote the following immediately below:

"I hereby acknowledge the return of the money paid to Mr. and Mrs. Duane Olsen, and I do not claim any interest within the receipt or the property mentioned therein. Orval Cheney. 1-19-46."

At the same time Cheney lent to the Olsens sufficient money to enable them to make up the balance of the $1,900 required to be paid that day under the terms of the contract, to prevent the lapse of the contract. Cheney procured a cashier's check made payable to the broker, Davis. Plaintiff, Mrs. Olsen, with another woman then took this check to the home of Mrs. Tholen, but they did not find her home. They then took the check to the broker. It was Saturday, January 19, 1946. The broker accepted the check as delivered by the Olsens, and noted on the Olsen copy of the contract,

"1-19-46 Rec'd $1900.00 as per the terms of the above receipt. Arthur Davis."

He called defendant the following Monday to advise her that plaintiffs had paid the balance of the down payment. He also cashed the check and deposited the money in the bank. On Monday, January 21, Mrs. Tholen conferred with the broker. In the course of her conversations with him she stated that she was willing to go ahead if she was selling to the Olsens and not to Cheney. During such conversations, she raised no question about the right of the broker to receive payment of the $1,900. A few days later she told the broker that she would like to have a clause inserted in the contract to the effect that the contract could not be assigned until another $1,000 had been paid on the purchase price. Plaintiffs reported back to the broker that they had no objection, but she did not sign the final contract form. Demand was made for possession and for abstract of title showing marketable title. Upon her failure to comply with the demand, this action was instituted for specific performance of the agreement to sell.

In assailing the judgment, defendant contends: (1) That plaintiffs repudiated the contract by the attempted assignment to Cheney on January 18, 1946. (2) That neither payment nor tender of payment of the $1,900 was duly made by plaintiffs. (3) That the evidence does not support the decree.

We find no merit in the first contention. Assuming that the assignment was not permissible under the terms of the preliminary sale agreement, the attempt to assign did not amount to repudiation. The very nature of an assignment is an attempt to transfer some rights to another. The act of assigning consequently negatived an intent to repudiate, unless it was accompanied by words or actions which evidenced an intent upon the part of the assignors to not only transfer their rights under the agreement, but also to free themselves from its obligations. Until the suit was filed, defendant did not claim that there was any repudiation. She testified that on January 21, when Mr. Davis told her about the deposit of the $1,900 that she

was willing to proceed with the contract if she were dealing with the Olsens, but that she objected to dealing with Cheney. After the broker expressed his misgivings about the attempted assignment and consulted his attorney, it appears that the purported assignment was canceled by Cheney early on the 19. Mrs. Tholen did not at that time treat the attempted assignment as a repudiation, nor on Monday, January 21, when the broker advised her of the payment of the balance of the down payment.

The second proposition argued by defendant is that there was neither payment nor tender of payment to defendant as seller, by January 19, 1946. Counsel argues that no payment was made to the defendant and that no money was tendered for the reason that plaintiffs did not bring the cash to the home of defendant, but a cashier's check made payable to the broker alone. If it be defendant's contention that the money had to be paid directly to her instead of being paid to the broker, she is confronted by the fact that, on the date payment was due, she was not available for making tender. If she had been home when one of the plaintiffs called, and had objected to having the check payable to the broker, plaintiffs could have made other arrangements. Where in a contract for the sale of land no place is fixed for the payment of the purchase money, tender thereof at the residence of the vendor on the day stipulated for payment is sufficient compliance on the part of the purchaser. *Smith* v. *Smith*, 25 Wend., N. Y., 405. And see *Shannon* v. *Freeman*, 117 S. C. 480, 109 S. E. 406. But aside from that, the record shows that payment was in fact made on the day stipulated, to one authorized to receive it.

The listing contract executed by defendant granted the Davis Investment Company the exclusive right to sell the property at the price specified on said listing contract for a stated period. The contract stated that the company was authorized and employed to offer the property for sale on behalf of defendant. It further specifically provided:

"You are hereby authorized to accept a deposit on the purchase price of said property, and to retain your commission out of the first money

paid on account of the purchase price or as an earnest money deposit. In the event of an earnest money deposit or payment being made to you, and the buyer fails to comply with his earnest money agreement, you are hereby authorized, in my name or otherwise, to declare such forfeiture, and to retain as much of such sum so forfeited as would equal your commission as if such sale had been fully consummated."

The commission on the transaction was in excess of $300. The broker received only $100 in November. The broker was handling the collection of the down payment of which the $1,900 was to be a part. All the negotiations were conducted through the broker. The broker was the agent of the defendant as seller to collect the down payment by virtue of the provisions of the listing contract. No claim is made by defendant that she notified plaintiffs that the authority of the broker to collect the money had been terminated, even assuming that she had the right to do so. The failure of plaintiffs to learn the exact nature of the broker's authority before making payment to him, could not change the scope of his existing authority. Payment to the broker as agent under the listing agreement, constituted payment to the seller as principal. After this action was instituted, the broker paid the money into court, subject to his claim for compensation. In view of the authority expressed or implied in the listing agreement, and in the light of other circumstances, the contention that the $1,900 was not paid nor tendered to defendant within time, is untenable.

The final contention that the evidence does not support the decree for specific performance must likewise be overruled. What we have previously said disposes of the balance of the contentions with respect to the sufficiency of the evidence. See *Johnson* v. *Jones,* supra. The decree is therefore affirmed, with costs to respondents.

PRATT, WADE, WOLFE, and LATIMER, JJ., concur.