Unatin 7-Up Company, Inc., Appellant, *v.* Solomon.

Argued October 3, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*William A. Blair,* with him *Allen H. Berkman,* for appellant.

*Samuel G. Wagner,* with him *Samuel Silverman,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 27, 1944:

We are convinced that, from any standpoint of fair dealing and abstract justice, the merits of this case are wholly with the plaintiff, and furthermore we believe that there are no principles, either of law or equity, which prevent our giving effect to that conviction. Accordingly, we are of opinion that the decree of the court below must be reversed.

Plaintiff, Unatin 7-Up Company, Inc., is engaged in the manufacture, bottling and distribution of a soft drink beverage, with its principal establishment in Beaver Falls, another plant in Sharon, and a warehouse in Pittsburgh. Defendant, Anna Solomon, trading under the name of Anchor Bottling Works, is engaged in Pittsburgh in the manufacture of soft drinks. On September 20, 1943, defendant gave a written ten days' option to one E. R. Pflug, who was representing plaintiff corporation as an undisclosed principal, to purchase "everything in Anchor Bottling Works . . . including machinery, trucks, sugar quota, gasoline quota, everything with the exception of bottles, cases, syrups, soda tanks, seltzer machine"; the purchase price was to be $13,000; the consideration for the option was the sum of $100 which Pflug then and there paid to defendant.

In the late afternoon of Wednesday, September 29th, Pflug went to defendant's establishment for the purpose of accepting the option and completing the transaction. Harry L. Unatin, the president of plaintiff corporation, came to Pittsburgh on the same day and remained at a hotel prepared to pay the purchase price. Pflug, however, was told by Morris Solomon, defendant's brother, who was then apparently in charge of the plant, that his sister had gone home on account of the immediate ap-

proach of important religious holidays which were to begin at sundown and extend over Thursday, September 30th, and Friday, October 1st. At Solomon's suggestion Pflug thereupon telephoned to Samuel Silverman, Esq., a member of the bar, and notified him of his desire and readiness to settle the transaction according to the terms of the option; the attorney told him to return to Pittsburgh on Monday, October 4th, when he (Silverman) "would have her (defendant) there and give us a clear title to it." Since, however, defendant denies that the attorney was, at that time, authorized to act for her, this conversation between him and Pflug must, for present purposes, be disregarded.

On Monday, October 4th, Pflug and Unatin came once more to Pittsburgh and Pflug telephoned to Silverman and again told him that they were there to "close the deal", whereupon Silverman said that "the deal was off" and that "she (defendant) wouldn't sell". This time there can be no question as to the attorney's authority because in her answer to plaintiff's bill of complaint defendant admitted that "about October 1, 1943, upon telephone inquiry by said Silverman, defendant advised him that, if said Pflug should again call said Silverman about the matter, he should advise said Pflug that she would not have any further dealings with him" because of certain alleged reasons, one of which, obviously untrue, was that she "had not given said Pflug any option." On the same day, Monday, October 4th, Pflug sent a letter to her by registered mail rehearsing the facts, notifying her that she was breaching the contract, and again expressing his readiness to consummate the transaction. She did not reply to this letter.

Plaintiff's bill in equity for specific performance was dismissed by the court on the ground that plaintiff had not accepted the option or made tender of the purchase money on or before Thursday, September 30th, the day on which the option expired according to its terms. It

is true that time ordinarily is of the essence of an option, in equity as well as in law, whether expressly so stipulated or not, and therefore the failure of an optionee to make and communicate his election within the prescribed time terminates his rights. It is also true that, if the option does not specify the place of acceptance and settlement, the optionee must, for those purposes, exercise the utmost diligence and good faith in seeking the optionor at his place of residence or wherever else he may reasonably be found. But what the learned court below overlooked in this case are the circumstances which excused Pflug from a literal compliance with that rule. Having attempted to express his acceptance and complete the transaction toward the close of Wednesday, September 29th, he was told, and it was admittedly the fact, that defendant was about to enter upon the observance of sacred religious holidays extending over Thursday, September 30th, and Friday, October 1st. His visit, therefore, to defendant's residence would apparently have been futile; the religious prohibition of engaging in worldly transactions during that period being presumably directed to the person and not to the place where they might be carried on, it was wholly unlikely that defendant would be available for secular matters at her home any more than at her business establishment.* Pflug was reasonably justified, therefore, in abstaining from visiting her at her residence until her observance of the religious holidays had ended; he might well have considered it indelicate and improper to intrude on her under such circumstances. Certainly he had no possible interest of his own to serve by delay, for he was then and there ready to complete the deal and was at the plant for that very purpose. Thus it was defendant, not Pflug, who was responsible for the fact

---

* It is stated in defendant's brief that "it was Silverman's holiday as well as the appellee's, and . . . he did not transact secular matters on those important holidays."

that the acceptance of the option, the execution of the appropriate documents, and the payment of the purchase money, were not consummated before the expiration of the option on Thursday, September 30th. Where a party who insists upon exact time has himself been the cause of delay, specific performance will be decreed: *Vankirk v. Patterson,* 201 Pa. 90, 95, 50 A. 966, 967; *Loughney v. Quigley,* 279 Pa. 396, 401, 124 A. 84, 86; *Brown v. Hill,* 280 Pa. 1, 4, 124 A. 184, 185; *Paralka v. Grummel,* 282 Pa. 235, 238, 127 A. 619, 620. In discussing the efforts of an optionee to accept the option and make a tender of the purchase money within the time limited in the option this court said in *Schaeffer, to use, v. Coldren,* 237 Pa. 77, 84, 85 A. 98, 99, 100: "He did everything that could be reasonably expected of him in serving notice of his election to exercise the option and in making tender of the purchase money. . . . It has been frequently held that acts, insufficient in themselves to make a complete tender, may operate as proof of readiness to perform, so as to protect the rights of a party under a contract, where a proper tender is made impossible by reason of circumstances not due to the fault of the tenderer."

Once the exercise of the option within the stipulated period was prevented by defendant, plaintiff became entitled to a reasonable time for action after the condition which necessitated the delay had ceased: *Paralka v. Grummel,* 282 Pa. 235, 238, 127 A. 619, 620. Pflug proceeded well within such time, for he gave notice on Monday, October 4th, of his acceptance of the option and his desire and readiness to make settlement. Defendant having, through her attorney, unconditionally repudiated her obligation, she thereby waived the necessity of a tender; the law, which is eminently practical, does not require the doing of a vain thing. Some point is made of the fact that Unatin apparently had in mind to pay by check instead of cash and only $12,900 instead

of $13,000, being of the impression that the $100 which had been paid for the option was to be deducted from the purchase price. But in Pflug's letter of October 4th he recognized his obligation to pay the larger sum; moreover, where one does not object to the amount or character of a tender at the time it is made he cannot be permitted to do so after it is too late to make a better one. By announcing that she refused to abide by the option which she had given, defendant not only waived the necessity of any tender at all, as has already been pointed out, but she precluded herself from thereafter seeking to justify her refusal on the ground of a defect in the tender which, had attention been called to it at the time, could easily have been remedied: *Leafgreen v. Labar,* 280 Pa. 215, 222, 223, 124 A. 443, 445. True, her repudiation of the option did not excuse plaintiff from giving notice of its election to purchase, for until the option was accepted no contract of purchase existed and defendant was under no obligation to convey the property. But the required notice of acceptance *was* given by Pflug on October 4th.

There is no question here as to the jurisdiction of equity. It appears that under O.P.A. regulations it is practically impossible for a new industrial user to secure a sugar quota and that the allotment of such a quota can be obtained only in connection with the transfer of some going concern; also it is impossible at present to purchase machinery for the manufacture of soft drinks except through the acquisition of an existing plant. Under such circumstances it is obvious that plaintiff can obtain adequate relief only by a decree of specific performance. As a "last-ditch" defense, defendant suggests that, because of certain features of the transaction, the O.P.A. is not likely to grant plaintiff a sugar allotment in pursuance of the transfer of defendant's existing quota. Plaintiff, however, produced as a witness the official in charge of food rationing in the Pittsburgh

District, who indicated that there was nothing in the rationing regulations which would render it impossible for the O.P.A. to make such a grant. Be this as it may, the matter is not one which concerns defendant. She must perform the obligation which she assumed, and it will be for plaintiff to take the risk of the O.P.A.'s refusing to approve a transfer of the sugar quota.

The decree is reversed, and the record remanded with direction to enter a decree of specific performance as prayed for; costs to be paid by defendant.