16269

SOUTHERN SILICA MINING & MANUFACTURING
CO. v. HOEFER
(56 S. E. (2d) 321)

*Messrs. David S. Mellichamp and Cooper & Gary,* of Columbia, *for Appellant,*

*Messrs. Robinson & Robinson,* of Columbia, *for Respondent,*

*Messrs. David S. Mellichamp and Cooper & Gary,* of Columbia, *for Appellant, in Reply,*

488

496

498

October 27, 1949.

PER CURIAM.

The decree of the circuit court in this action has been considered in the light of the questions presented by appellant. The trial record and briefs have been reviewed and we are of opinion that the decree represents the correct disposition of all of the several issues except that we think there should be a new trial upon the issue of the amount of damages or sum necessary to put respondent's industrial railroad track in repair in accord with the terms of the lease under which appellant has had possession. The decree will be reported and is affirmed and adopted as the judgment of this court except paragraph 4 of the judgment, which awards judgment against appellant in the sum of $10,350.00. It is reversed for new trial.

Defendant-appellant's motion for rehearing or new trial, which was refused, was in part upon the ground that the money judgment for repairs was excessive and with respect to it appellant discovered new evidence after filing of the

decree which was not before available in the exercise of due diligence. This was particularized in counsel's affidavit that after the judgment he consulted W. B. Barber, Track Supervisor of Southern Railway Company, who had jurisdiction after January 1, 1949 of respondent's industrial track, and requested him to examine the property and submit an estimate of the cost of restoring the track to condition suitable to the use for which it was intended. Barber examined the contracts in evidence between the Railway Company and respondent, which were exhibits "T" and "U", with attached plats, and stated on oath that respondent's existing track was not the track described in the contracts and shown on the attached plats. He also said that his estimate of the cost of repairs to the track, quoting, "to adequately take care of the normal use for which it is intended" was $2,-508.47, which he itemized. Track Supervisor Cooper, also of Southern Railway, had testified for respondent at the trial only about a month before that his estimate was $7,-728.69.

It is clear from the decree that the court mainly relied for the amount of damages upon the recited testimony of Track Supervisor Cooper, then in charge of the territory which included respondent's industrial track. Other witnesses, produced later by appellant, made much smaller estimates of the cost of putting the track in repair for use. A reading of the testimony is convincing that the conflicting standards of repair in the witnesses' minds caused the very wide divergence in their estimates which is important upon the motion for new trial, as will be seen. It appears that very shortly after the trial Mr. Cooper was succeeded as Track Supervisor of the Railway Company in that territory by Mr. Barber whose affidavit on motion for new trial states that he assumed the position on January 1, 1949.

Exhibits "T" and "U" came into the case in a remarkable manner. Appellant called as a witness T. J. Royster who was Chief Clerk to the Division Superintendent of Southern Rail-

way, apparently to prove that the cost estimate of repairs of then Track Supervisor Cooper (respondent's witness) was based upon main line requirements to which that witness testified, in effect, and that the Railway Company had but one standard which was applicable to all trackage, including industrial spurs. On cross examination by respondent's counsel the witness Royster produced, and respondent later introduced in evidence, two contracts between the Railway Company and respondent dated June 25, 1928, and Oct. 4, 1922, which became exhibits "T" and "U". They provided that respondent should at its expense maintain the trackage, quoting, "in good condition and repair and in all respects in accordance with the reasonable requirements of the Railway Company . * * *." The quoted provision was read into the record by respondent's counsel, explaining, "We want to get these contracts back in Mr. Royster's file." The witness further testified that Track Supervisor Cooper was requested to estimate the repairs which would meet the requirement of the contracts, which he did.

Counsel's affidavit on motion for new trial recites that he was previously unaware of the existence of the contracts and from his examination of them and the attached plats, was unable to ascertain that the tracks therein referred to were not the track involved in the controversy and that he and his client were unable with due diligence to ascertain that important fact for lack of experience in map reading. In the counter-affidavit of respondent's counsel it is shown that he had no former knowledge of these exhibits before his cross examination of appellant's witness, Royster; that he understood from the latter's evidence that they related to the trackage in question, on which account he offered them in evidence; and they were in possession of the court from December 29, 1948 (the date of the trial) until January 28, 1949, when they were returned to the Railway Company.

This feature of the motion for new trial was refused upon the authority of *Boykin v. Capehart,* 205 S. C. 276, 31 S. E. (2d) 506. However, the facts of that

case distinguish it and we do not think it applicable. The record in the case in hand indicates what amounts to mutual mistake of counsel. The agreements, exhibits "T" and "U", were placed in evidence by respondent, conscientiously we have no doubt, and in the belief that they were applicable to the controversy; but in that situation it does not lie in the mouth of respondent to say that appellant should have discovered the presently alleged inapplicability by the use of due diligence. Under the peculiar circumstances, it was not the duty of the one any more than that of the other. There can be no controversy that the after-discovered evidence may well change the result of the action with respect to the amount of the money judgment.

It is seen from the circuit decree, published herewith, that the amount found necessary for repairs is in lump sum without segregation of the component amounts for repair to the railroad track and for repair of the other equipment and appliances. Thus the entire money judgment will have to be reversed and the legal issue of the proper amount re-tried. In all other respects the judgment is affirmed.

Affirmed in part and reversed in part, and remanded for new trial of the stated issue of damages.