16695

DARGAN v. PAGE

(73 S. E. (2d) 705)

*Messrs. Lonnie D. Causey,* of Conway, and *Samuel Want,* of Darlington, *for Appellant,*

*Messrs. Epps & Hoffman,* of Conway, *for Respondent,*

December 16, 1952.

BAKER, Chief Justice.

On August 2, 1951, the appellant executed an option to O. L. Todd, his heirs, successors and assigns, for a consideration of $50.00, giving to him the right, option and privilege of purchasing all of the pine timber and hardwood timber of certain dimensions named therein on a tract of land in Horry County, South Carolina, more particularly described in said instrument of writing "all for the sum of Sixteen thousand dollars ($16,000.00), payable at the office of Cordie Page, Conway, S. C., *at any time within thirty (30) days from the date hereof.*" (Emphasis added.) This instrument of writing contained further provisions pertinent to the issues raised by this appeal, and as follows:

*"Provided, however, that the purchase money hereunder shall not be due or payable until the tender to the grantee, after grantee's demand therefor hereunder, of good and sufficient conveyances* in the law for said property, free of encumbrances, and with the approval of the Attorney of the grantee. *I or we further agree, at any time within the period above mentioned, on demand of said grantee, or Attorney,* to deliver to said grantee or Attorney, for inspection and copies, all evidences of the title to said land, and to convey to said grantee all the above described timber, privileges, timber rights, and easements, free of all encumbrances, with all deeds in the chain of title properly recorded; by a good and sufficient general warranty deed, together with exclusive rights of way and all the timber thereon, over said land and contiguous lands, and the right to build and construct, maintain and operate railroads, steam skidders, tramways and cart-ways over and across said lands, with the right to use such brush and small timber as grantee may desire for such purposes, free of charge: But with the privilege to said grantee of taking, at grantee's pleasure, a conveyance of such title as I or we may have, with a deduction from the above mentioned price, proportionate to any defect in, or encumbrances on, said title.

"*This contract is made upon the express condition that the purchase money of said timber is to be paid within the time limit, subject to the above conditions; and upon failure of the grantee to make payment within fifteen (15) days after the tender of good and sufficient title to said timber, as above provided, this contract shall cease and be utterly null and void.* I or we further agree to give the said grantee the full term of 2 years on all hill timber and 3 years on Swamp timber years, from the date of said deed, to cut and remove the said timber from the said land." (Emphasis added.)

This option to purchase was prepared by O. L. Todd or at his direction, and on August 4, 1951, said Todd assigned all of his rights, title and interest therein to the respondent.

The first knowledge that appellant had of the assignment of this option either actual or constructive, came to him on September 3, 1951, the second day after the time limit of thirty (30) days had expired, and when R. D. Epps, Esq., an attorney at Conway, senior member of the law firm of Epps & Hoffman, representing the respondent, and on behalf of the respondent, demanded a conveyance of the timber under the option which appellant had given to O. L. Todd, and offered to pay the consideration therefor. The appellant took the matter under advisement, after procuring from Mr. Epps a copy of the option, and on the following day, notified Mr. Epps that he would not convey the timber for the reason that the option had expired on September 1, 1951.

This action was then brought for specific performance, the complaint alleging "That if the option was not exercised within the time provided, which, however, the plaintiff denies; still, any failure to exercise the same was due to the fact that the defendant could not, after due diligence, be found or located so that the plaintiff could make demand any sooner than the same was made." The defendant (appellant) in his answer admits that he has no office separate and apart from his home and residence, but alleges that

while he was not at his residence the greater portion of Friday, August 31st, and on Saturday morning, September 1st, he returned there at about 12 o'clock noon on said Saturday and "was available and could easily have been reached at his residence on the afternoon of September 1st, the last day in which to comply with the said option"; that having learned that Mr. Epps had been trying to reach him on the phone, although he did not know the purpose thereof, he made special effort to get in touch with Mr. Epps during that afternoon, but was unable to do so.

Issue having been thus joined, the case was referred to Honorable J. K. Dorman, Master in Equity for Horry County, who after taking all testimony offered by the respective parties, submitted said testimony, and his report in which he held that time was of the essence of the contract, that is, that the option expired on September 1, 1951, and that at that time no notice of acceptance or demand for a deed had been made on defendant (appellant), "and that the option lapsed *ipso facto*"; and recommended that the complaint be dismissed and judgment for the defendant-appellant be entered. '

On exceptions to the Master's report, the Circuit Court reversed the Master, and ordered, adjudged and decreed that the defendant (appellant) execute and deliver to the attorneys for the plaintiff (respondent) a good and sufficient deed, conveying to the plaintiff (respondent), his heirs and assigns, the timber described in the option, and to contain all the conditions and privileges expressed in the option, upon the tender to defendant, or his attorney, of the purchase price therefor "which is Sixteen Thousand and no/100 Dollars." It was further ordered, that if the defendant (appellant), for any reason failed to comply as to the making such deed of conveyance, then, the plaintiff (respondent) may at any time after ten days from the date of the order, and within twenty days from the date hereof, pay the purchase price into the hands of the Clerk of Court for Horry County, whereupon "the said Clerk shall execute and de-

liver to plaintiff, his heirs and assigns, such deed for said timber."

The printed argument of respondent sets forth the issues involved in the appeal as two in number, to-wit:

"1. Is time of the essence of this contract?

"2. Even if time be of the essence, do the circumstances of this case excuse the respondent from strict compliance, or, in other words, is the appellant estopped from claiming that the timber deed was not demanded within 30 days?"

There is, however, a third issue in the case which is discussed in the briefs of counsel, and in the report of the Master, and in the decree of the Circuit Court and it should be first disposed of. It is whether or not, under a proper construction of the option, it expired September 1, 1951.

From the foregoing, it will be seen that the time elements stated in the option are these: (1) the consideration for which the option was given was payable at the office of the appellant "at any time within thirty (30) days from the date hereof"; (2) the purchase money however was not due or payable "until the tender to the grantee, after grantee's demand therefor" of a good and sufficient conveyance; (3) "This contract is made upon the express condition that the purchase money of said timber is to be paid within the time limit, subject to the above conditions"; and (4) the option was to become null and void "upon failure of the grantee to make payment within fifteen (15) days after the tender of good and sufficient title to said timber as above provided."

While the time limitations of the option appear at first to be somewhat confusing, due probably to the fact that a printed form of option was used and filled in in an attempt to make it conform to the intention of the parties in connection with the present transaction, it is quite clear that the purpose and intention of the parties were that the optionee (and his assignee) should make payment of the purchase money at a stated place within thirty (30) days from

August 2nd, but that the optionee (or his assignee) could make demand for a deed at any time within the thirty day option period and would then have fifteen days after tender of the deed in response to such demand within which to make payment.

Otherwise stated, the time element of the option period was alternately fixed at thirty days from the date of the instrument, but with the right on the part of the optionee to demand a deed at any time within such thirty day period, and to then have fifteen days after the tender of the deed to consummate the transaction.

This is the result of the view expressed by the Master, is consistent with the understanding of respondent's counsel as shown by their handling of the situation as herein related, and is consistent with their statement of the questions presented.

A controlling consideration in this regard is that no other construction of the option than that above stated produces a plausible result. If it were true, as apparently contended by respondent in this appeal, that the time limit of the option ran until the optionee made demand for the deed, without the thirty day limitation, the result would be that the option would run for an indefinite period of time, with the right on the part of the optionee to determine the length of such period.

Having reached the conclusion that in the absence of a demand for a deed or payment of the purchase money within thirty days after the date of the option, the option expired on September 1, 1951, we next consider the legal question whether time is of the essence in regard to the right of the optionee to enforce compliance by the optionor with the terms of the option.

The rule that while, in equity, strict compliance with the time limits contained in a contract will not ordinarily be enforced, a different situation exists in regard to options. The time element expressed in such instru-

ments must be strictly complied with, or relief by way of specific performance will be denied. This principle has been fully recognized and applied by this Court.

In the case of *Pope v. Goethe,* 175 S. C. 394, 179 S. E. 319, 320, 99 A. L. R. 1005, this Court, speaking through Acting Associate Justice (now Justice) Oxner, was dealing with the right to a renewal of an instrument conveying timber. The period for cutting as expressed in the instrument was four years. The instrument contained a renewal privilege of a period of one year upon the payment of the sum of $350.00, "provided, this provision can only be exercised by the said M. P. Pope, his legal representatives or assigns, upon written notice to the grantor given ninety (90) days prior to the expiration of this lease."

Prior to the expiration of the four year period, the parties entered into discussions and negotiations relative to the renewal, and to a reduction in or elimination of the amount to be paid for the renewal, during the course of which the four year option period expired. Tender of the amount set forth in the option was then made and refused.

Discussing the legal principles involved in the enforcement of an instrument of the character in question, this Court said:

"The renewal privilege contained in the lease partakes of the nature of an option, unilateral in character, binding the owner of the land without any corresponding obligation on the other party, in which time is ordinarily of the essence, and is strictly construed.

\* \* \*

"Where notice of the exercise of the option is required in a certain manner, time is of the essence, and exact compliance will be required."

As this Court therein said: "\* \* \* courts will enforce the contract as it is written."

In the cited case, the negotiations for the exercise of the right of renewal began prior to the expiration of the four

year period, and in this regard it was contended by the optionee that by reason of the pendency of the discussions thereabout prior to the expiration of the four year period, there was a waiver of the requirement of strict compliance with the terms of the option for a renewal for one year. This contention was rejected because, as this Court said, the evidence did not disclose that the failure of the optionee to exercise the option in the manner required thereby was due to any misleading representations on the part of the optionor.

The applicable principles were also stated by this Court in the case of *Hutto v. Wiggins,* 175 S. C. 202, 178 S. E. 869, 871, where this Court, speaking through the late lamented Justice (subsequently Chief Justice) Bonham, said:

" 'An option is to be distinguished from a sale, or a contract, or agreement or offer to sell. The chief difference between a contract to sell and purchase real property, and an option to purchase said property lies in the fact that, while the former creates a mutual obligation on the part of one party to sell and the other to purchase, the option merely gives the right to purchase, at a fixed price, within a fixed time, without imposing any obligation to do so. * * *

\* \* \*

"'* * * It will not be claimed that, in order that time be of the essence of a contract, it must be so stated in exact language. It may be inferred from the language of the contract and the conduct of the parties.

" 'At law the general rule laid down by many, particularly early authorities, is to the effect that a time stipulated in a contract for its performance is of its essence, unless a contrary intent appears from the face of the contract, that is to say if a person promises another to do a certain thing by a certain day in consideration that the latter will do something for him, the thing must be done by the date named, or the latter is discharged from his promise.' "

Probably the leading case in this State upon the subject under discussion is that of *Tuxbury Lumber Co. v. Byrd,*

131 S. C. 32, 127 S. E. 267, 269. In that case this Court was dealing with the renewal clause contained in a timber deed. Compliance with the terms of the renewal provision was not undertaken until after the expiration of the original term for cutting. This Court said:

"The provision for extension, conferring a privilege and unilateral in its obligation, partakes of the nature of an option, in which time is ordinarily of the essence, and the accepted doctrine applicable to such contracts is that they should be strictly construed in favor of the grantor or optionor. * * * Applying that principle, we are of the opinion that a correct interpretation of the agreement for extension requires that the terms upon which the extension was to be granted should be complied with on or before the expiration of the specified period of 15 years for the removal of the timber."

In support of the principles thus stated, see *Waterman v. Banks,* 144 U. S. 394, 12 S. Ct. 646, 36 L. Ed. 479.

There remains for consideration the question, as stated both by the respondent and by the Circuit Judge, whether the circumstances of this case excuse the respondent from strict compliance with the terms of the option, "or, in other words, is the appellant estopped from claiming that the timber deed was not demanded within thirty (30) days." The testimony bearing upon this issue is wholly undisputed and discloses the following:

September 1, 1951, fell on a Saturday. There was no communication of any kind between the parties from August 2, 1951, when the option was executed, until September 3, 1951. The appellant did not even know that the option had been assigned.

The appellant is a member of the Bar, residing in Conway, but has not been in the active practice for several years, and therefore does not maintain an office. In the home occupied by him, he had some office facilities, but he had no office help. There was a telephone in his residence, and an

extension phone into an apartment in the same house, which apartment was rented and occupied by a lady (Mrs. Thomas), who, merely as a matter of courtesy, and not in the execution of any duties that rested upon her, in appellant's absence from his home, answered the phone and delivered messages to him coming thereover.

On Friday, August 31, 1951, one of respondent's counsel, Mr. Epps, several times attempted to reach the appellant by telephone. The appellant not being at home, Mrs. Thomas answered the phone over the extension phone in her apartment, and informed Mr. Epps that appellant was not at home, but had gone out of town, taking with him a suitcase. The appellant had in fact, so he testified, gone to Florence, taking his adding machine with him to have it repaired. He did not return to Conway until about noon on Saturday, September 1st, the last day of the option period.

Respondent's said counsel made further efforts, during Saturday morning, to reach the appellant by telephone, but at 12 o'clock M. closed his office, which was the time he customarily closed the same on Saturdays, so he testified, and went out of town for the week-end, without making any further effort to reach appellant.

Upon his return about noon Saturday (September 1, 1951), the appellant was advised by Mrs. Thomas of the calls that had been made by Mr. Epps, whereupon the appellant, without any knowledge of the purpose of the repeated calls, undertook to reach respondent's counsel by telephone and by going to his office. The office of such counsel, however, was closed. Mr. Epps had gone to Myrtle Beach. Appellant again called by telephone several times during that afternoon without reaching respondent's counsel, and about four or five o'clock in the afternoon went to Murrells Inlet for the week-end, leaving word however with Mrs. Thomas where he had gone and could be reached. Respondent's counsel made no further efforts to reach appellant until Monday morning, September 3rd, when the two finally got together, with the result that after discussion be-

tween them as to the terms and meaning of the option, the appellant stated that he considered that the option had expired and that he was not bound thereby.

The above is the substance of the testimony. And it appears therefrom that at no time was there a demand by the respondent or by his counsel for a deed, or a tender of the purchase money, unless such demand or tender is deducible from or excused by the conversation that took place on Monday, September 3rd, and of course prior to that day the option, as above construed, had already expired.

We find nothing in the testimony that may constitute an estoppel against the appellant to rely upon the strict terms of the option. There being nothing to the contrary in the testimony, the appellant presumably was available prior to August 31st, and again first at Conway from midday until 4 or 5 o'clock, and then at Murrells Inlet, on Saturday, September 1st, to receive from the respondent or his counsel compliance with the terms of the option, through the demand for a deed, or the tender of the purchase money.

There was no time during the thirty day period when, if respondent or his counsel had wished to comply with the terms of the option, they could not have done so by a written communication mailed or delivered to the appellant, or left at appellant's home. The only reasonable inference deducible from the undisputed testimony is that respondent's counsel was satisfied that the appellant would not hold him strictly to the terms of the option, and therefore they were not as punctilious as they otherwise would have been in pursuing the matter. And in fairness to such counsel it should be said that while they apparently recognized the desirability of going into the matter with the appellant during the last two days of the option period as construed by us, they may have had in mind a contrary construction of the option which would have given their client additional time for compliance.

None of the elements to create an equitable estoppel are present here. Appellant did nothing to lull the respondent

or his counsel into a belief that the terms of the option would not be strictly enforced.

It is true, as asserted by the respondent, that if performance or tender of performance of the option, within the option period, was prevented by the optionor, he would not be permitted in equity to take advantage of the delay and to declare the option at an end under the doctrine that time is of the essence. That was the holding of this Court in the case of *Shannon v. Freeman,* 117 S. C. 480, 109 S. E. 406. In that case a *contract* for the sale of land in South Carolina, made between citizens of such State, provided for performance on a stated date and expressly set forth that time was of the essence. Compliance by the vendee was prevented by reason of the fact that the vendor, prior to the date for performance expressed in the contract, left South Carolina for a visit to her daughter in Louisiana, and did not return to this State until eight days after the date fixed by the contract for consummation of the sale. The report of the Master in that case, which was adopted by the Circuit Court and by this Court, pointed out that the contract contemplated consummation in this State, and held that the purchaser could not reasonably be required to go to Louisiana to consummate the matter. The Master found, too, that the vendee was prepared and desired to close the transaction within the contract period and that the vendor, on the other hand, would not have consummated the transaction had she been in South Carolina at the time for closing. On these and other pertinent facts, this Court held that performance or tender of performance of the contract by the vendee was prevented by the vendor, and that under these circumstances the vendor would not be permitted to take advantage of the delay.

Here the situation is very different. The optionor was available within the option period to receive a tender of the purchase money or a demand for the execution of a deed. And he did and said nothing to lead the optionee to believe that strict compliance would not be required, or to prevent the optionee from making such compliance.

While the result of the holdings above indicated may appear to be somewhat harsh, sound legal doctrine demands that at the option of the owner, compliance with the very letter of the option may be exacted, the basic reasons being that the contract is unilateral in character, tying up the title and rights of ownership of the optionor, and giving the optionee "a right and privilege" which only by strict compliance with the terms of the option can be transformed into a mutually binding contract of sale.

The judgment of the Circuit Court is reversed, and the case dismissed.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

STUKES, J., dissents.

STUKES, Justice (dissenting).

I regret to have to dissent from the judgment of the Court in this case. I think equity and good conscience require affirmance of the trial court.

There is no dispute as to the law. The question to answer is whether the facts make sufficient excuse for the failure of the attorney to find the optionor during the last two days of the thirty-day option period. I think they do.

The real effect of the decision is to reduce the thirty-day option to one for twenty-eight days. During the last two days of the option period the optionor was admittedly available only a few hours during Saturday afternoon when it is common knowledge that law offices are usually closed; and this was Saturday afternoon of the Labor Day holiday week-end. Again, it is common knowledge that all who can at that season trek to the beaches for week-ends from nearby Conway, which was the home of the parties to the option. This the optionor and the attorney for the assignee of the optionee did on this occasion.

The optionor's effort to find the attorney at his office on Saturday afternoon when there was no answer to the telephone and the door was locked should have been obviously

useless. The letter which he then wrote and held to mail until the following Monday morning was likewise a vain gesture. If he had deliberately secreted himself from Friday morning until Saturday noon, he could not have more successfully evaded the efforts of the optionee's attorney to reach him. He had no office and apparently the only person at his home knew only that he had left on Friday morning with a suitcase for an undisclosed destination and on a trip of unknown duration.

I do not think that a court of equity should, in such a situation as the evidence discloses, countenance the avoidance of an obligation. The extended litigation indicates that the rights at stake are valuable. And I do not think that the cited decisions require it. On the contrary *Shannon v. Freeman,* 117 S. C. 480, 109 S. E. 406, tends otherwise. It involved a contract to sell rather than an option, as here, but it expressly provided that time was of the essence so the applicable rule should be the same.

That other courts of equity of sensitive conscience would follow the course I advocate in this case is indicated by the annotation in 157 A. L. R. 1311 which follows report of the well-considered Pennsylvania decision of *Unatin 7-up Co. v. Solomon,* 350 Pa. 632, 39 A. (2d) 835. See also especially the cases collected under the subtitle, "Absence or evasive conduct," 157 A. L. R. 1318 *et seq.*