20325

L. Arlen COTTER et al., Respondents, v. JAMES L. TAPP
COMPANY, Appellant.

(230 S. E. (2d) 715)

*Messrs. Robinson, McFadden, Moore & Pope,* of Columbia, *for Appellant,*

*Messrs. Boyd, Knowlton, Tate & Finlay,* of Columbia, *for Respondent,*

December 8, 1976.

*Per Curiam:*

This appeal is from an order of the Honorable Clyde A. Eltzroth, presiding judge of the Court of Common Pleas

for Richland County. His order, dated November 7, 1975 and granting summary judgment to respondents (plaintiffs below), fairly sets forth and disposes of all the issues raised by appellant. Let this order be printed as the directive of this Court. Matters not necessary to a decision have been deleted.

### Order of Judge Eltzroth

. . . . .

The action is one for a declaratory judgment to determine the rights of the parties under a certain written lease executed by the plaintiffs as landlord and the defendant as tenant on March 10, 1969.

The individual plaintiffs are the general partners of the plaintiff Dutch Square Associates, a South Carolina Partnership, which operates as landlord of the Dutch Square Shopping Center in Richland County. Defendant is a South Carolina corporation owning a chain of large department stores, one of which is located at the Dutch Square Shopping Center. The lease in controversy covers the defendant's department store at the Dutch Square Shopping Center. Defendant went into possession of the premises under this lease on March 1, 1970.

The specific provisions of the lease that are in dispute are contained in Article XXXII of the lease. This article, among other things, grants the defendant an option to lease either one or both of two expansion areas adjacent to the store space presently leased by defendant. This option, which for convenience sake will be hereinafter referred to as the primary option or the option to expand, is exercisable by the defendant at any time during the first five years of its lease, which five year period ended March 1, 1975. Article XXXII also gives defendant the option to renew this primary option for an additional three years "upon the payment by tenant of thirty cents ($0.30) per sq. ft. per year for said expansion area, payable monthly as an option cost." This option, which for convenience sake will be hereinafter referred to as the

renewal option, contains no notice requirements for its exercise.

The present motion for summary judgment raises the question whether defendant has taken adequate legal steps to exercise this renewal option and thereby extend the primary option beyond the date on which it would have otherwise expired, March 1, 1975.

The complaint alleges among other things that the primary option expired on March 1, 1975, by reason of the defendant's failure to pay or tender on or before that date the option cost referred to above. Defendant in its answer alleges that it exercised the renewal option by written notice contained in a letter to plaintiffs dated February 13, 1975, and defendant specifically denies that it was required to pay the option cost on or before March 1, 1975, in order to exercise the renewal option.

Defendant also opposes summary judgment on the ground that there exist disputed issues of material fact that require the taking of testimony and defendant has filed with the court an affidavit in opposition to plaintiffs' motion for summary judgment with copies of correspondence attached. Neither party desires a jury trial and if the motion for summary judgment were denied, the matter would be heard by the Court of Common Pleas without a jury.

. . . . .

It is undisputed that the defendant has not as of this date moved into the expansion area and for purposes of the present motion, both parties agree that the defendant has not yet exercised the primary option. The only question to be presently decided by me is whether defendant has taken adequate steps to exercise the renewal option and thereby extend the primary option beyond its expiration date of March 1, 1975. Stated differently, the question is: was defendant's letter to plaintiffs dated February 13, 1975, sufficient in law to exercise the renewal option or was defendant required to pay or tender the option cost prior to March 1, 1975? With respect

to this question, I conclude that there exists no genuine issue as to any material fact and that plaintiff is entitled to summary judgment for the reason that payment of the option cost was clearly required by the terms of the renewal option and under the existing law in South Carolina.

*Undisputed Facts*

1. The lease provides in pertinent part:

ARTICLE XXXII

. . . . .

[after five years] this option may be extended for another three (3) years upon the payment by tenant of thirty cents ($0.30) per sq. ft. per year for said expansion area, payable monthly as an option cost.

2. The first five years of defendant's lease ended March 1, 1975.

3. On March 1, 1975, defendant had not exercised the primary option to expand so as to create a binding bilateral contract between plaintiffs and defendant to go forward with expansion. (Defendant alleges this in its verified answer and plaintiffs admit it for purposes of this motion).

4. Defendant did not pay or tender to plaintiffs the option cost referred to in Article XXXII of the lease on or before March 1, 1975. Verified Answer, Paragraph 7.

5. By letter to plaintiffs dated February 13, 1975, which covered several subjects, defendant stated:

We are very anxious to proceed with the expansion and wish to take this opportunity to notify you that we wish to exercise our option as per our contract under Article XXXII, to reserve the expansion space until such time as we do expand.

6. By letter mailed June 13, 1975, and received on June 14, 1975, the plaintiffs notified defendant that the option to expand had terminated for failure to pay the option cost.

7. By letter dated June 30, 1975, and hand delivered on July 1, 1975, defendant tendered the option cost.

8. By letter dated July 2, 1975, and delivered on July 5, 1975, plaintiffs returned defendant's tender of the option cost.

Conclusions of Law

It is well settled in South Carolina that option contracts are strictly construed in favor of the optionor and against the optionee. E. g., *Southern Silica Mining & Manufacturing Company v. Hoefer,* 215 S. C. 480, 497, 56 S. E. (2d) 321, 328 (1949) ("[the] argument by the defendant that the Courts do not favor forfeiture and therefore the option to renew must be granted, overlooks the fact that options because unilateral, are strictly construed against the party claiming the option").

It is also well settled in this state that if the option requires performance in a certain manner, time is of the essence and exact compliance with the terms of the option are required. E. g., *Pope v. Goethe,* 175 S. C. 394, 179 S. E. 319 (1935), *Edwards Lumber & Land Company v. Smith,* 191 N. C. 619, 132 S. E. 593, 594 (1926) ("[optionor] not bound by a mere notice of acceptance of his offer as contained in the option, unaccompanied by a tender of the purchase price"). See also 51C C. J. S. Landlord & Tenant § 57 (mode of exercising extension or renewal contained in lease must be in accordance with that prescribed in the agreement and lessee must strictly adhere to the terms thereof).

In its answer defendant asserts that its letter of February 13 was a valid exercise of the renewal option. The renewal option, however, contains no notice requirements. It provides that the primary option may be extended for an additional three years upon payment of a specified option cost.

Thus, the fact that defendant gave notice prior to March 1, 1975, that it wished to extend the primary option is completely irrelevant. Plaintiffs were entitled to exact compliance with the terms of the option and there is simply no way to

equate a requirement to pay money with the giving of written notice. Defendant could have given written notice every day in the month of February, 1975, and such notice still would not have satisfied a requirement to pay money. Plaintiffs, upon receiving defendant's letter, could assume that timely tender of the option cost would be forthcoming. Defendant, however, neglected to pay or tender the option cost on or prior to March 1, 1975, and the primary option lapsed on that date.

Also, in South Carolina it is well settled that the consideration for a renewal option must be paid or tendered in advance before the original time limit expires, unless there is an express provision to the contrary. *A. C. Tuxbury Lumber Company v. Byrd,* 131 S. C. 32, 127 S. E. 267 (1925). The *Tuxbury* case involved a timber deed with a fifteen year term plus "such additional time as [Tuxbury] may desire for cutting and removing said timber upon the payment of interest on the original purchase price, at the rate of six (6%) per cent, per annum, payable for each additional year, provided such additional time does not exceed ten (10) years . . ." 131 S. C. at 34, 127 S. E. at 268. No timber was cut during the first fifteen years of the contract and the renewal money was tendered shortly after the expiration of the fifteen year period. In holding that Tuxbury's tender was ineffectual to extend the contract, the court said:

"The provision for extension, conferring a privilege and unilateral in its obligation, partakes of the nature of an option, in which time is ordinarily of the essence, and the accepted doctrine applicable to such contracts is that they should be strictly construed in favor of the grantor or optionor. (citing cases). Applying that principle, we are of the opinion that a correct interpretation of the agreement for extension requires that the terms upon which the extension was to be granted should be complied with on or before the expiration of the specific period of 15 years for the removal of the timber . . . There is no express provision in the con-

tract as to the time of payment of the extension which could reasonably be construed to indicate an intention that the consideration for the additional time should not become payable until after the expiration of the time limit for removal."

131 S. C. at 40, 127 S. E. at 269-70.

In Tuxbury the court cited *Minshew v. Atlantic Coast Lumber Corp.*, 98 S. C. 8, 81 S. E. 1027 (1914), for the legal proposition that it is necessary to pay "the consideration for an extension before the original time limit expires, where there is no express provision to the contrary . . ." *Minshew* also involved a contract for the sale of timber to run for five years after the start of cutting. The contract provided that the "time limit may be extended from year to year thereafter upon the payment . . . of interest on the original purchase price at the rate of 6 per cent. per annum." 98 S. C. at 17, 81 S. E. at 1030. In holding that defendant had not commenced cutting within a reasonable time and that defendant had not complied with the extension option, the Court said:

"There is no question that, if a party desires to exercise this right to extend an option which he has, beyond the fixed time he has acquired, before his time expires, if he desires to exercise his option, he must tender and pay the amount agreed upon in advance, and serve notice that he will exercise his option for the period agreed upon, and will each year in advance pay the amount agreed upon. This payment must be unqualified and in strict compliance with the agreement of the parties. The payment must be unconditional and in advance."

98 S. C. at 21-22, 81 S. E. at 1032.

In the present case it is undisputed that defendant did not pay or tender the option cost until after the original five year option had expired. Therefore, under the *Tuxbury* and *Minshew* cases, its tender comes too late. At that time, the original five year period of the primary option had expired and there was nothing left to extend or renew.

At first blush, the results of these cases may seem harsh. In this case, however, it would have been very easy for the defendant to have begun payment of the option cost before March 1, 1975. The requirement of the option cost is clearly spelled out in Article XXXII of the lease, to which Article defendant made reference in its notice letter of February 13, 1975.

Finally, the courts have recognized that harsh results in option cases are necessary to further more compelling considerations of public policy. *Dargan v. Page,* 222 S. C. 520, 73 S. E. (2d) 705 (1952). When an individual grants an option he ties up his rights and property for a specified period of time without binding the other side. For this reason he is entitled to strict compliance with time limits and other terms of the option. Thus, if the optionee fails to comply with the terms of the option, even though he may have an excuse, he must bear the responsibility and not the optionor.

In its memorandum in opposition to summary judgment, defendant does not challenge the correctness of any of the above decisions. Rather defendant takes the position that there exist factual issues on whether plaintiffs, by their course of dealings with defendant, have waived the time limit for exercising the renewal option and that plaintiffs' motion for summary judgment should be denied for this reason. Defendant's affidavit in opposition to summary judgment is addressed to the question of waiver.

The position that defendant now takes to avoid summary judgment constitutes a new matter which should have been, but was not, affirmatively pleaded in its answer. S. C. Code Ann. § 10-652 (1962) ; J. Pomeroy, Code Remedies 819 n.2 (1904). Waiver as a defense must be specially pleaded and the facts constituting waiver must be specifically pleaded. 28 Am. Jur. (2d) Estoppel and Waiver §§ 168, 172. "[W]here waiver is not pleaded specially, evidence is inadmissible to prove it, a claim of waiver is unavailable to the party who has neglected to plead it, and

the court cannot consider or take notice thereof." Id. § 168 at 855. Since defendant failed to plead waiver in this case, its affidavit as a whole is not relevant to any issue made by the pleadings and evidence to prove the allegations contained therein would not be admissible at trial. Accordingly, defendant's affidavit is improper under Circuit Court Rule 44, which provides that summary judgment affidavits "shall set forth only such facts as would be admissible in evidence," and for this reason, I conclude that defendant's affidavit cannot serve as a basis for avoiding summary judgment.

Nevertheless, I have considered the allegations contained in defendant's affidavit and I hold alternatively that they fail to indicate a genuine issue as to any material fact. I also hold that inquiry into the facts is not desirable to clarify the application of the law and in so holding, I have construed the affidavit in the light most favorable to defendant.

Paragraph 5 of defendant's affidavit sets forth the principal basis for its claim of waiver:

"That as the attached correspondence between the parties shows, throughout the entire course of the dealings and planning for expansion, time was never considered of the essence by the parties in the payment of monies among the parties."

Attached to the defendant's affidavit are copies of some twelve letters, some of which relate to discussions between the parties beginning in 1973 at which time defendant says that it considered, but decided against, exercising its option to move into the expansion areas. Nothing contained in any of these letters could possibly constitute a waiver by plaintiffs of the time requirement of the renewal option. Neither do these letters, even remotely, raise a factual question on this point. Indeed, some of the letters indicate that defendant had to be repeatedly reminded to pay its bills. Moreover, even if it is assumed, for the purpose of argument, that these letters show that plaintiffs did not treat time as of the essence in its day to day business dealings with defendant,

even as to matters concerning the lease in question, this fact still would not constitute a waiver of a time requirement contained in an option contract between the parties. It is elementary that time is of the essence with option contracts, unless otherwise stated. E. g., *A. C. Tuxbury Lumber Company v. Byrd,* 131 S. C. 32, 127 S. E. 267 (1925).

. . . . .

Accordingly, for the reasons stated above, the plaintiffs' motion for summary judgment is granted and the option to expand contained in Article XXXII of the lease between the parties is hereby declared to have expired on March 1, 1975, and to be no longer available to the defendant.

Affirmed.

NESS, RHODES and GREGORY, JJ., concur.

LEWIS, C. J., and LITTLEJOHN, J., dissent.

LITTLEJOHN, Justice (dissenting) :

Being of the opinion that payment or tender of a monthly installment of the option cost on or before March 1, 1975, was not a necessary condition for exercising the renewal option, I respectfully dissent.

The letter from appellant to the respondents, dated February 13, 1975, which gives notice of appellant's desire "to exerice our option as per our contract under Article XXXII, to reserve the expansion space until such time as we do expand,".was legally sufficient to renew the option. Essentially, this letter constituted an "acceptance" of the respondents' "offer" to renew the option. Thus, upon receipt of the letter, a bilateral contract was formed between appellant and respondents. Appellant obligated itself to the respondents to pay the option cost monthly during the three (3) year extended period in accordance with the language of the option. Respondents were correspondingly obligated to perform by providing the space, etc.

Since the contract was bilateral, both parties were obligated and protected. If, as the majority finds, payment of the

option fee was so critical, the respondents need only have notified appellant as to its payment delinquency as the first step in protecting their rights under the contract. However, the respondents chose to remain silent for approximately three and one-half months, then notified appellant that the option had been extinguished and thus could not be renewed.

In discussing the importance of appellant's letter of February 13, 1975, the majority has found that "the fact that the defendant gave notice prior to March 1, 1975, that it wished to extend the primary option is completely irrelevant." I do not agree. It should be noted that the present case and those cases cited by the majority as controlling differ greatly. In *Tuxbury Lumber Co. v. Byrd,* 131 S. C. 32, 127 S. E. 267 (1925), *Minshew v. Atlantic Coast Lumber Corp.,* 98 S. C. 8, 81 S. E. 1027 (1914), and *Dargan v. Page,* 222 S. C. 520, 73 S. E. (2d) 705 (1962), the optionor never received notice of the optionee's intention to renew or extend the option until after the expiration date had passed. The court in those cases had only to deal with the late tender of payment of the option cost.

This is not the situation here. Appellant's intentions to renew the option were clearly expressed to the respondents well in advance of the option date.

Had there been no contact between appellant and the respondents by letter, payment, or otherwise, until after the expiration date, I would agree with the majority that any attempt to extend the option would be invalid. This was not the case and, under the facts as they are given to us, a bilateral contract was formed between the parties under which they should both be bound.

LEWIS, C. J., concurs.