699 S.E.2d 723

**Carlisle McNAIR, Appellant,**

v.

**UNITED ENERGY DISTRIBUTORS, Respondent.**

No. 4740.

Court of Appeals of South Carolina.

Heard June 16, 2010.

Decided Sept. 15, 2010.

46

David M. Ratchford and William R. Calhoun, Jr., of Columbia, for Appellant.

John E. Grupp, of Charlotte, and Larry Dwight Floyd, Jr., of Columbia, for Respondent.

THOMAS, J.

Carlisle McNair (McNair) appeals a circuit court order upholding a magistrate's dismissal of his application to eject a lessee from his property. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 26, 2002, United Energy Distributors (United Energy) entered into an agreement to lease twenty acres of real property from James McNair, McNair's father. Pursuant to the lease terms, United Energy was to use the land for "processing, storing, pumping, transferring, and otherwise beneficiating and handling diesel fuel oil and other oils and liquids."

The signed and dated lease includes an acknowledgement that United Energy paid consideration of $500 "cash in hand" to James McNair. Although the lease does not state a rental amount, the parties agree United Energy was to pay rent of $500 per month during the initial lease term.[1]

Regarding the duration of the arrangement and the rent to be paid, the lease provides as follows:

4. The term of this lease shall commence on July 1, 2002, and extend for a period of five years from that date, together with the right to renew said lease for three additional five-year periods upon the condition that upon each of said renewals, the monthly rent shall be increased by 10% of the monthly rent of the preceding period. Such rental shall be paid monthly and in advance and, in the event of a failure of the Lessee to pay any monthly rent for a period of thirty (30) days after having been notified by the Lessor that the rent was in default, the Lessor shall have the right to declare the lease forfeited and terminated by the Lessee.

---

1. Paragraph Two of the lease describes the use to be made of the premises "for consideration paid and the monthly rental *hereinafter* specified," but no monthly rental appears in any of the eight paragraphs following Paragraph Two. (emphasis added).

The lease includes the following provision regarding termination:

5.   Lessee shall have the right to terminate this lease at any time by giving written notice to the Lessor of Lessee's election to terminate and upon the giving of such notice Lessee shall have no further liability or obligation of any kind to Lessor hereunder except as follows: Lessee shall be liable for the payment of the monthly rental for the time remaining in the then-current five year period.

James McNair died on October 19, 2004, and McNair inherited the property.   In 2005, McNair began receiving the monthly rental payments of $500 from United Energy. McNair, however, believed the fair market rental value of the property was $5,000 per month and claimed to have received an offer to lease the property for $3,500 per month.

On July 3, 2007, after the end of the first five-year lease term, United Energy paid McNair $500 in rent.   By letter dated July 12, 2007, McNair's attorney advised United Energy that the lease had expired and it was now a holdover tenant. The letter further instructed United Energy to vacate the premises before the end of the month or renegotiate the lease. By letter dated July 17, 2007, counsel for United Energy advised McNair's attorney that his client had exercised its right to extend the lease for an additional five-year period. Acknowledging that the rent was to increase by ten percent upon extension of the lease, counsel enclosed a check of $50 to McNair as additional rent and advised in a letter sent with the payment that it was "made within the time allowed (30 days) to cure."   Counsel for McNair responded by returning the check for the additional rent to United Energy's attorney along with a letter advising that McNair would begin eviction proceedings after August 1,2007.

On August 20, 2007, McNair filed an application for ejectment with the summary court for Aiken County.   In his application, he asserted the rental term had ended.   A magistrate heard the matter the following month, and on October 3, 2007, she issued an order holding (1) the lease unambiguously contained an option for the lessee to renew the lease but (2) the lease expired on June 30, 2007, because United Energy had not taken any affirmative action to exercise its option.

The magistrate further held she lacked jurisdiction to entertain the equitable defenses United Energy sought to present at the hearing.

United Energy appealed the magistrate's order, and the circuit court heard the matter on January 8, 2008. The circuit court later issued an order reversing the magistrate's refusal to adjudicate the equitable matters that United Energy raised and ordered a trial de novo in the magistrate's court.

On August 7, 2008, the matter came before another magistrate for a second hearing. A few days later, the magistrate issued an order holding (1) the lease includes an option to renew, (2) United Energy demonstrated its intent to continue the lease arrangement beyond the initial five-year term by spending more than $600,000 on improvements, and (3) based on *Kiriakides v. United Artists Communications, Inc.*, 312 S.C. 271, 440 S.E.2d 364 (1994), United Energy had exercised its option to renew the lease.

McNair appealed the magistrate's decision to the circuit court, which heard the matter and affirmed the magistrate's order, holding (1) United Energy renewed the lease for a second five-year term, (2) the lease did not expire on June 30, 2007, and (3) the magistrate properly relied on *Kiriakides* as the controlling authority. McNair appeals.

## STANDARD OF REVIEW

Whereas the circuit court maintains a broad scope of review in deciding an appeal of a magistrate's order, this court, when reviewing the circuit court's adjudication of an appeal of an ejectment proceeding in magistrate's court, does so under a more limited standard, under which (1) findings of fact are to be upheld if there is any supporting evidence and (2) absent an error of law, the circuit court's holding is to be affirmed. *Bowers v. Thomas*, 373 S.C. 240, 244, 644 S.E.2d 751, 753 (Ct.App.2007). Moreover, as with any other appeal before this court, the respondent may argue any additional reasons why we should affirm the appealed ruling, "regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000). This court may in its discretion review the additional reasons presented by the

respondent and "if convinced it is proper and fair to do so, rely on them *or any other reason appearing in the record* to affirm the lower court's judgment." *Id.* at 420, 526 S.E.2d at 723 (emphasis added).

## LAW/ANALYSIS

On appeal, McNair alleges the circuit court erred in (1) rewriting the parties' contract to make it a twenty-year lease instead of a five-year lease with an option for three renewals, (2) ignoring pertinent statutory authority concerning the expiration of a tenancy of a term of years, (3) applying case law concerning a tenant's default in paying rent rather than a decision concerning a tenant's attempt to exercise an option to continue the lease beyond the purported end of the lease period, and (4) considering parol evidence and equitable defenses. We hold none of these arguments provides sufficient reason to reverse the circuit court's decision.

### I. Rental Term

█ Citing *Cotter v. James L. Tapp Co.*, 267 S.C. 647, 230 S.E.2d 715 (1976), and other cases concerning option contracts, McNair argues that in order to exercise its right to renew the lease for a second term, United Energy was required to tender the increased rent for July 2007 on or before June 30, 2007, the date the initial lease term was scheduled to expire. McNair correctly points out the lease in the present case expressly provides for an initial term of five years with the right to renew for three additional five-year periods. We disagree, however, with the suggestion that the provisions in the lease regarding the terms under which the lessee can exercise this right are not distinguishable from corresponding provisions in the lease at issue in *Cotter*.

*Cotter* concerned a lease with two options: (1) a five-year option for the tenant to lease additional space and (2) a renewal option under which the tenant could renew the first option "for an additional three years 'upon the payment by tenant of thirty cents ($0.30) per sq. ft. per year for said expansion area, payable monthly as an option cost.' " *Id.* at 650, 230 S.E.2d at 716. The central dispute was whether the tenant had exercised the renewal option merely by giving

written notice to the landlord without paying the stated option cost. *Id.* at 651, 230 S.E.2d at 716–17. Holding notice alone was insufficient to exercise the option to renew, the court adhered to the rule that "if the option requires performance in a certain manner, time is of the essence and exact compliance with the terms of the option [is] required." *Id.* at 653, 230 S.E.2d at 717–18.

Here, however, the only provisions concerning conditions to be fulfilled before the termination of any lease period appear in Paragraph Five of the lease. Under this paragraph, United Energy has the right to "terminate this lease at any time" upon written notice to McNair; however, it remains responsible "for the payment of the monthly rental for the time remaining in the then-current five year period." Therefore, under the terms of this lease, the burden is then on United Energy to notify McNair only if it intends to terminate at the end of a five-year term rather than to give notice to McNair if it intends to extend the lease beyond the end of that term. In the event United Energy desires to renew for an additional term, the lease provides that the monthly rent is increased upon the renewal for an additional term, not that renewal is contingent on United Energy's tender of increased rent before the end of the initial term of the lease. In other words, whereas the renewal option at issue in *Cotter* could be exercised "*upon payment* by the tenant" of the option cost, the lease in the present case expressly provides for an increase in the monthly rent only "upon each of said renewals." Furthermore, because the lease does not require advance notice or satisfaction of any other conditions before the expiration of the initial term, we hold United Energy's continued occupation of the premises was sufficient to keep the lease in effect for an additional term. *See* 49 Am.Jur.2d *Landlord and Tenant,* § 166, at 186 (2006) ("Where there is a general privilege to extend a lease, holding over by a tenant may be sufficient, even without any notice to the lessor, to extend the lease under the option."); 52 C.J.S. *Landlord and Tenant* § 111, at 174 (2003) ("[W]here the lease requires no notice, an option to extend or renew may be exercised by holding over, without any notice being given by the tenant.").

■ Furthermore, assuming without deciding that McNair is correct that United Energy could exercise its renewal

option only by the payment of the increased rent before the expiration of the current lease term, we believe the record supports a determination that United Energy fulfilled this requirement. This determination is based on our re-examination of the record in view of representations by counsel for McNair during oral argument.

This court requested counsel for McNair to support his client's position that the lease requires United Energy to tender the increased rent before the end of the initial lease term to renew the lease for a second term. In response, counsel directed the court's attention to the stated consideration in the lease of $500 cash in hand that had already been paid to James McNair when the parties executed the lease, explaining that these funds were to be applied toward the rent for July 2002, the first month during the lease term. According to the ledger included in the record, however, United Energy made an additional payment of $500 before the early part of July 2002 as well as for each succeeding month thereafter through June 2007. From this schedule we further conclude: (1) on June 7, 2007, United Energy paid McNair $500 and McNair accepted the payment; (2) as of June 30, 2007, the last day of the initial lease term, United Energy paid $500 more than what it owed on the lease at that time; (3) although as of July 1, 2007, United Energy owed $50 in rent because of the increase that took effect after the renewal of the lease for a second term, it made an additional payment of $500 that was accepted by McNair during the first week of July 2007; and (4) therefore, by July 12, 2007, the date McNair gave notice that he considered the lease to have expired, United Energy had paid McNair $450 in excess of what was due for July 2007. Under these circumstances, we hold McNair's own actions indicate he did not view the $50 that United Energy owed as of July 1, 2007, as a fatal defect in United Energy's exercise of its option to renew the lease for a second term. *Cf.* J.R. Kemper, Annotation, *Necessity for Payment or Tender of Purchase Money Within Option Period in Order to Exercise Option, in Absence of Specific Time Requirement for Payment,* 71 A.L.R.3d 1201, 1215 (1976) (noting courts have held that payment or tender is not necessarily a condition precedent to the optionee's exercise of an option if the parties to the option agreement had "by their

own actions or conduct, indicated that such was also their interpretation and understanding").

■ Furthermore, in the same section of the lease that requires the rental increase upon renewal of a five-year term is language that grants United Energy thirty days to cure a default after it has been notified by McNair that it is in arrears. As indicated above, we find that although the lease provides the monthly rent would increase by ten percent in the event of a renewal for an additional term, this increase is not, under the terms of the parties' agreement, a condition precedent for the renewal to take effect. United Energy's payment of the $50 increase within the thirty-day period following notice from McNair's attorney to vacate the premises or renegotiate the lease is therefore in compliance with the terms of the parties' agreement. *See Litchfield Co. of S.C. v. Kiriakides*, 290 S.C. 220, 225, 349 S.E.2d 344, 347 (Ct.App. 1986) ("Because the lease set[s] forth the acts which would result in default, and the mode of terminating the tenancy, the parties' rights are to be determined by a fair construction of the contract, not by statutory ejectment principles.") (citing *Biber v. Dillingham*, 111 S.C. 502, 504, 98 S.E. 798, 799 (1919)).

## II. Statutory Law

■ McNair also contends the circuit court erred in disregarding section 27–35–110 of the South Carolina Code (2007), arguing that under this statute, the absence in the lease of any notice requirement for renewal beyond the initial five-year term is of no effect. We disagree.

Under section 27–35–110, "[w]hen there is an express agreement, either oral or written, as to the term of the tenancy of a tenant for a term or for years such tenancy shall end without notice upon the last day of the agreed term." In this case, the lease was to "extend for a period of five years" from July 1, 2002, the date the term commenced; however, the lease further allows for renewal for three additional five-year rental periods. United Energy's tenancy, then, would have ended on "the last day of the agreed term" only if it did not renew the lease for an additional term. *See Jordan v. Sec. Group*, 311 S.C. 227, 230, 428 S.E.2d 705, 707 (1993) ("Where the language

of a contract is plain and capable of legal construction, that language *alone* determines the instrument's force and effect.") (emphasis added). Because we have determined the lease was renewed for a second term pursuant to the terms of the parties' agreement, United Energy's tenancy did not automatically end pursuant to section 27–35–110.

### III. Remaining Issues

McNair also contends the circuit court incorrectly applied case law concerning a tenant's default in paying rent rather than case law concerning the exercise of an option and should not have considered parol evidence and equitable defenses. Because any determination of the merits of these arguments would not affect our holding that United Energy had exercised its option to renew the lease according to the lease terms, we decline to address them. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not discuss remaining issues if the disposition of a prior issue is dispositive of the appeal).

### CONCLUSION

We hold the parties' lease did not end on the stated date for the termination of the initial lease term based on our determination that United Energy's actions were sufficient to renew the lease for an additional term.

**AFFIRMED.**

FEW, C.J., concurs. PIEPER, J., concurs in a separate opinion.

PIEPER, J., concurring.

I concur in the majority opinion. I write separately only to clarify for the bench and bar what I see as a continued misconception about the authority of magistrates to determine equitable defenses that may arise from time to time in matters otherwise properly within their jurisdiction. Pursuant to section 22–3–10 of the South Carolina Code (2007), magistrates have concurrent civil jurisdiction "in all matters between landlord and tenant and the possession of land...." S.C.Code Ann. § 22–3–10(10) (2007). The State Constitution

of 1868 provided "[t]hat justice may be administered in a uniform mode of pleading without distinction between law and equity," thus abolishing the historical distinction between courts of law and courts of chancery. *See* S.C. Const. of 1868, art. V, § 3, *reprinted in* S.C.Code Vol. I (1922); *see also* Rule 2, SCRCP ("There shall be one form of action to be known as 'civil action.' "). Despite the merger of courts of law and equity, magistrates were still constitutionally prohibited from deciding equitable cases until more than a century later. *See* S.C. Const. art. V, § 21 (1962), *amended by* S.C. Const. art. V, § 26 (1973) ("Magistrates shall have jurisdiction in such civil cases as the General Assembly may prescribe: *Provided*, such jurisdiction shall not extend ... to cases in chancery.") (emphasis in original).

In 1973, the General Assembly ratified an amendment rewriting Article 5 of the South Carolina Constitution. *See* Act No. 132, 1973 S.C. Acts 161–166. The constitutional prohibition against magistrates deciding cases in equity was removed and replaced by a shortened provision entrusting magistrate court jurisdiction solely to the General Assembly. *See* S.C. Const. art. V, § 26 ("The General Assembly shall provide for [magistrates'] terms of office and their civil and criminal jurisdiction."). Today, there are no longer any constitutional or statutory provisions that prohibit magistrates from deciding equitable defenses. Although I concur with the majority that we need not address the application of any equitable defenses, I merely wish to clarify that the magistrate had jurisdiction to consider United Energy's equitable defenses because these defenses arose as part of the dispute between a landlord and a tenant, which is within the jurisdiction of the magistrate court pursuant to section 22–3–10. *See* S.C.Code Ann. § 22–3–10(10).

As the sixteen-time world heavyweight wrestling champion Ric Flair once said, "Space Mountain may be the oldest ride in the park, but it has the longest line." The same holds true for equity. For justice to be rendered in cases properly before a magistrate, equitable and legal principles must "ride together" and be applied according to applicable established principles.